[Crim. No. 20252. Sept. 20, 1979.]

In re IVORY JOE DAVIS et al., on Habeas Corpus.

**COUNSEL**

Michael Satris, under appointment by the Supreme Court, for Petitioners.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy and Jean M. Bordon, Deputy Attorneys General, for Respondent.

**OPINION**

**NEWMAN, J.**—Petitioners Davis, Massingale, Anderson, Macchiano, Brown, Shubin, and Acosta, through a habeas corpus petition filed by their counsel, complain that their due process rights are violated by lengthy segregation pending disciplinary proceedings at San Quentin Prison.

■ A writ of habeas corpus may be sought to obtain a declaration and enforcement of a prisoner's rights in confinement. (*In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640] and cases cited.) Five of petitioners sought and were denied relief in superior court and then in the Court of Appeal; they and two others then petitioned this court and we issued an order to show cause.

Each petitioner was held in segregation from 33 to 83 days before his disciplinary hearing was convened. Two were found by prison officials to be guilty of infractions but did not serve disciplinary segregation sentences because their time in prehearing segregation exceeded the sentences. (The Department of Corrections rules limit disciplinary segregation sentences to 10 days maximum.) The other five inmates were found not guilty of infractions. Petitioners' complaints concern their segregation in maximum security housing during those delays in the disciplinary process.

The case involves two distinct administrative proceedings: (1) *classification hearing,* to determine an inmate's placement in the institution and the degree of control and supervision required (see rule 3370 of the Rules of the Director of the Department of Corrections, Cal. Admin. Code, tit. 15, hereafter cited as Rules); (2) *disciplinary hearing,* to determine whether an inmate is guilty of a serious rule violation and to impose sanctions if he is guilty (see Rule 3315).

The housing at issue here is in the Security Housing Unit (SHU), to which prisoners are assigned by one of two administrative actions: (1) *administrative segregation,* i.e., segregation from the general inmate population for nonpunitive reasons (Rule 3330(a)); (2) *isolation* or *disciplinary segregation,* imposed as punishment after an inmate is found guilty of a serious Rule violation (Rule 3315 (b)(4)(B); Rule 3330(b) (now Rule 3330(o)(3))).

Conditions inside the SHU at San Quentin have been described as follows by the United States District Court for the Northern District of California:

"Prisoners in the maximum security units are confined in cells approximately five feet wide by eight feet long. The cells are without fresh air or daylight, both ventilation and lighting being poor. The lights in some cells are controlled by guards. It is difficult for prisoners to get needed medical attention. They must eat in their cells or not at all. They

are allowed very limited exercise and virtually no contact with other prisoners. They cannot participate in vocational programs. They are denied those entertainment privileges provided for the general prison population. Parole is usually denied to them until after release from maximum security segregation.[4]" (*Wright* v. *Enomoto* (N.D.Cal 1976) 462 F.Supp. 397, 399, affd. *Enomoto* v. *Wright* (1978) 434 U.S. 1052 [55 L.Ed.2d 756, 98 S.Ct. 1223].)

Petitioners' own description, uncontradicted by respondent, is similar to the federal court's. Further they note that restricted visiting is another incident of segregation: the number of visits is greatly reduced; visits occur only behind glass and via a telephone; the inmate is chained throughout the visit. Petitioners characterize the SHUs as "gruesome places, teeming with tension and hostility."

The return sets forth the facts of one disciplinary proceeding for each of the seven petitioners. Details vary, but the proceedings, occurring at different times over a seven-month period, are similar. Each inmate was charged with a "serious disciplinary offense" for which a maximum 10 days of segregation or other punishment could be imposed after a hearing. (Rule 3315(b)(4)(B).)[1] After being charged each was immediately taken to the prison's SHU and waited there for his hearing. They spent 33 to 83 days there before their hearings were convened. During that time each appeared at least once before a classification committee for review of his placement in the SHU.

Grounds for nonpunitive, administrative segregation were protection of the inmate's own safety, the safety of others, and the security of the institution. (Rule 3330(a), which has since been amended to include also "the integrity of an investigation.") The Rules did not explicitly require that all inmates charged with disciplinary offenses be placed in segregation. Yet pursuant to Rule 3317(c) (now Rule 3330(i)), in each classification hearing the nature of the charges was considered and the information leading to the charges was assumed to be true; and on that basis the committee determined that each inmate should be retained in the SHU pending determination on the charges. Five were found not guilty; the

---

"[4]As one of the affidavits before us aptly characterizes it, inmates confined in maximum security are 'warehoused.' The manner of confinement may cause permanent psychological, if not, indeed, physical, damage. If prolonged, it may even destroy the capacity of prisoners to lead a normal life after release. Affidavit of Bernard L. Diamond."

[1]See also Rule 3322, which provides in part: "No inmate will be kept in isolation or confined to quarters status longer than 10 days without the approval of the director."

two found guilty were sentenced by disciplinary committees to the maximum 10 days and given credit for time served.

We deal first with some procedural arguments of respondents. They argue that petitioners Shubin and Acosta should be severed from this proceeding because, unlike the other five petitioners, they did not first seek relief in a lower court. We decline to exercise our discretion to sever (*In re Hillery* (1962) 202 Cal.App.2d 293, 294 [20 Cal.Rptr. 759]), since all petitioners raise the same issues of law and there are no material factual issues.

Respondents point out that none of the petitioners is now in administrative segregation because of disciplinary charges pending at the time of their petition. It is argued that the action also is rendered moot by the new procedures for administrative segregation adopted after the order in *Wright* v. *Enomoto, supra,* 462 F.Supp. 397. However, all prison inmates in California remain subject to respondents' rules and procedures for placing them in segregation on the basis of disciplinary charges. The alleged constitutional deficiencies of those rules and procedures are not affected by the amendments and revisions. We therefore exercise our discretion to resolve the issue even though petitioners' subsequent release from segregation "would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23-24 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Fluery* (1967) 67 Cal.2d 600, 601 [63 Cal.Rptr. 298, 432 P.2d 986]; see also *In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640].)

We reject respondent's contentions concerning (1) the fact that this petition is signed and verified by petitioners' attorney on their behalf, rather than by petitioners themselves (see Pen. Code, § 1474), and (2) alleged failures to exhaust so-called administrative remedies.

### *Right to a Hearing*

*Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963] held that the Fourteenth Amendment requires minimum due process in prison disciplinary proceedings when the state has created a right to good-time credits and has permitted forfeiture only for serious misconduct. The court stated that the same requirement should apply when solitary confinement might be imposed. (*Id.,* at pp. 571-572, fn. 19 [41 L.Ed.2d at pp. 959-960].)

*Meachum* v. *Fano* (1976) 427 U.S. 215 [49 L.Ed.2d 451, 96 S.Ct. 2532] held that, in the absence of a state-created limitation on inmate transfers,

no hearing was required when a prisoner was transferred from one institution to another even if conditions in the second were substantially more burdensome. The court rejected the proposition that *"any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause . . . ." (*Id.,* at p. 225 [49 L.Ed.2d 451, at p. 459], italics in original.)

In *Montanye* v. *Haymes* (1976) 427 U.S. 236 [49 L.Ed.2d 466, 96 S.Ct. 2543] the court of appeals had distinguished administrative transfers from disciplinary transfers and had held that, when the latter have substantial adverse impact, hearings are required. The Supreme Court reversed, applying *Meachum* because the state had imposed no conditions on the discretionary power to transfer. (Accord, *Moody* v. *Daggett* (1976) 429 U.S. 78, 88, fn. 9 [50 L.Ed.2d 236, 244, 97 S.Ct. 274].)

■    *Wolff,* even in light of *Meachum* and *Montanye,* still requires a hearing for disciplinary segregation in San Quentin. California has created a liberty interest by the Rules that on a statewide basis condition disciplinary segregation on a finding of serious misconduct (Rule 3315(b)) and also require a hearing. (*Id.*)

Similarly the Rules articulate specific circumstances under which administrative segregation may be imposed. Rule 3330(a), in the version applicable at the time of this petition, states in part: "When an inmate's presence within an institution's general inmate population presents an immediate threat to the inmate's own safety, the safety of others, or to the security of the institution, the inmate will be removed immediately from the general inmate population . . . ." Therefore the inmate has a protected interest in not being confined in administrative segregation except for those reasons.

The United States Supreme Court has affirmed a holding to this effect in *Wright* v. *Enomoto, supra,* 462 F.Supp. 397, where the three-judge district court extended *Wolff's* minimum procedural protection to administrative segregation in California prisons. It was held that confinement of an inmate in maximum security constitutes a "severe impairment of the residuum of liberty which he retains as a prisoner—an impairment which triggers the requirement for due process safeguards." (*Id.,* at p. 402.) Further, California has "limited the discretion of the classification committees by statewide regulations . . . ." (*Id.,* at p. 402.) Therefore "the inmate has an interest, conferred by statewide regulation and protected by due process, in not being confined in maximum security

segregation unless he is found, for clearly documented reasons, to come within the standard set by the rules." (*Id.,* at p. 403.) The three-judge court then prescribed the same minimum procedure for administrative segregation as was required by *Wolff* for disciplinary sanctions; a hearing, advance written notice, opportunity to present witnesses and documentary evidence, written reasons for the decision, and counsel-substitute for an illiterate inmate and in a case with complex issues. The Supreme Court affirmed with no opinion. (*Enomoto* v. *Wright, supra,* 434 U.S. 1052; note dissent by Rhenquist and Burger, JJ. questioning the propriety of a three-judge court.)

Thus petitioners here had a right to fair hearing on the disciplinary charges (*Wolff*) and also on their administrative segregation pending the disciplinary hearing (*Wright*).

### *Due Process in the Classification Hearing*

Regarding the initial segregation, the classification hearings here were prompt, but lacked other safeguards required by *Wright*. Specifically the classification committee that ordered segregation was allowed to consider the nature of the charges against the inmate and was required to assume that the information on which the charges were based was true (Rule 3317(c); now Rule 3330(i)). Thus petitioners did not have the opportunity, required by *Wright,* to present testimony and other evidence on the reasons for segregation to the extent those reasons related to the pending charges (and apparently "pending charges" was the only reason in each case here). Written decisions were given, but each decision merely cited the pending charges as the main "evidence relied upon."

In fact the classification committee hearings and decisions on segregation seem almost meaningless for inmates who await disciplinary hearings. To confine prisoners in maximum security for 33 to 83 days without giving them the opportunity to contest the grounds is clearly arbitrary action that severely impairs the residuum of liberty retained.

Eventually, of course, the prisoner has a disciplinary hearing that does provide the safeguards required by *Wolff.* (Rule 3320.) If the disciplinary hearing followed the classification hearing as soon as practicable the inmate's limited liberty interest in not being summarily placed in segregation for a short time might well be balanced by the institution's strong interest in preserving security. (See *In re La Croix* (1974) 12 Cal.3d 146, 156 [115 Cal.Rptr. 344, 524 P.2d 816].) However, 33 to 83 days

appears to be not a reasonable delay, particularly when measured against the 10-day maximum penalty for guilty inmates. A study of the applicable Rules indicates that respondent Director of Corrections has determined a reasonable delay to be much shorter than 33 to 83 days, even in extraordinary circumstances. His Rules provide for a three- to ten-day delay between the filing of charges and the disciplinary hearing. (Rule 3320(b).) In extraordinary circumstances that delay may be as long as 30 days. (*Id.*) Petitioners do not specifically challenge the Rules on timing of disciplinary procedures (except as to delays for district attorney (DA) referrals; see discussion below); and respondents, even while attempting to justify the longer delays here, point to those Rules as "clearly reasonable." We therefore rely on the Rules as a measure of reasonable timing.

If the Rules were followed so that disciplinary hearings were held within a reasonable time after placement in segregation, the inmates' due process rights would not be violated by that segregation. In the absence of a reasonably prompt disciplinary hearing, an inmate must have some other reasonably prompt hearing where he can contest the grounds for his segregation. Such a hearing would be the equivalent of a disciplinary hearing where, as for these seven inmates, the reasons for segregation depend on the nature of the disciplinary charges and the assumption that they are true. ▉ Therefore we hold that when an inmate is placed in segregation because of a pending disciplinary charge he must have a hearing on that charge within a reasonable time or be released from segregation.[2]

The Rules govern the timing of several steps in disciplinary proceedings.[3] In the cases before us, officials have attributed most of the delay to

[2]Petitioners have suggested a requirement that where a disciplinary hearing is not held within seven days of segregation a "reasonable cause" hearing be held. But as the Director of Corrections in his informed discretion and based on his long experience with the various facts and circumstances in prison disciplinary cases has established a standard requiring a disciplinary hearing within 3 to 10 days, and, as that timing appears to us reasonable, we consider it appropriate to defer to his professional expertise in this matter (see *Jones* v. *North Carolina Prisoners' Labor Union* (1977) 433 U.S. 119, 141-142 [53 L.Ed.2d 629, 648-649, 97 S.Ct. 2532] (dis. opn. of Marshall, J.) rather than to devise new procedures ourselves.

[3]The Rules as drafted seem to complicate the coordination of various timing provisions. For example, Rule 3320(b) requires a hearing normally within 3 days of the inmate's receiving a copy of the violation report, which must occur 24 hours after the incident. But Rule 3319(a) allows an investigator's report to take 4 days after the investigator is assigned, an event that happens one working day after the submission of the case, which in turn happens 24 hours after the incident.

investigation. Rule 3319(a) applies to investigation of charges; and, normally, one working day after a case is submitted—by means of a CDC form 115 violation report (Rule 3312(c))—an investigator is assigned. His report must be complete and a copy given to the inmate within four days. In total then, investigation should take at most five days. "Under unusual circumstances" the chief disciplinary officer may grant a "reasonable delay," provided the inmate is informed in writing. In none of the cases before us is there any indication that the inmate was informed in writing of a delay in the investigation. Nor does any of the documents from the classification and disciplinary hearings either explain how "unusual circumstances" affected the investigations or attempt to justify the delays as reasonable. It would appear that the officials ignored Rule 3319(a).

As for delay not necessarily related to investigation Rule 3320(b), mentioned above, provides as follows: "A hearing on the charge will normally be held within 3 days but not later than 10 days of the date the inmate is given a copy of the rule violation report. . . . Under extraordinary circumstances and when further delay will not prejudice the inmate, the hearing may be delayed up to a maximum of 30 days from the date the inmate is given a copy of the rule violation report. The reason for delaying a hearing . . . will be documented on the report." In each case here one or two lines on the disciplinary report explain the delay; apparently nothing else was provided to satisfy the "documentation" requirement of Rule 3320(b). In no case does the explanation state that further delay would not prejudice the inmate. The apparent "extraordinary circumstances" are (in addition to DA referrals; see below) "rescission process,"[4] "assignment of an investigating employee," "investigation," "extended investigation," "re-investigation," "time needed for the investigator's report" and "lack of staff to form a committee." Are those "extraordinary circumstances" that justify even a 30-day delay, much less 33 to 83 days? In only two cases was a possibly qualifying reason given in addition to the others: "lockdown situation." Yet in those two cases there is no explanation of how long the lockdown lasted or why it prevented disciplinary hearings but not the three classification hearings that each of the two inmates had. Again, the Rules establishing time limits appear to have been ignored.

---

[4]The parole rescission process referred to apparently is that provided for in Rule 3324. At the discretion of the Community Release Board a disciplinary hearing may be held in combination with a rescission hearing; an institution disciplinary committee and a Community Release Board panel sit together; if the inmate is found guilty by the disciplinary committee at the first phase of the hearing, a parole rescission phase follows. Respondents have provided no argument in favor of a longer delay for a combined hearing other than a detailed description of administrative difficulties. However,

*Due Process and 60-day Delays for DA Referral*

Delays for three petitioners were caused in part by referral of their cases to the DA. According to Rule 3316(a) all felonies allegedly committed in prison are referred for possible prosecution. In such cases the disciplinary hearing is stayed, but if the DA has not decided to prosecute within 60 days the inmate may request a disciplinary hearing that then must be held within 15 days. Petitioners challenge the validity of the rule insofar as it is used to keep inmates in segregation without a reasonably prompt prison hearing.

We note first that in the three DA-referred cases here a large part of the delay occurred after the DA had declined to prosecute. The decisions not to prosecute Shubin, Brown, and Acosta were communicated after more than 30 days' segregation in each case. Yet hearings were still more delayed—21, 43, and 45 days, respectively. The explanations for those delays after DA decision are inadequate as measured by the Rules. Thus, even apart from referral to the DA the delays violated inmates' due process rights and reveal, again, respondents' failure to abide by their own Rules.

As for delay in fact due to DA referral, respondents offer a number of reasons for staying the disciplinary proceedings pending a decision on prosecution: to avoid any double jeopardy complication; to avoid impeding the DA's investigation; to protect against escape and assault risks; to avoid self-incrimination problems for the inmate.

Double jeopardy does not appear to be a problem. Respondents point to no case holding that prison discipline forecloses later criminal prosecution for the same conduct. Indeed, many cases hold to the contrary. (E.g., *U. S.* v. *Apker* (9th Cir. 1969) 419 F.2d 388; *Keaveny* v. *United States* (5th Cir. 1969) 405 F.2d 821; *United States* v. *Shapiro* (7th Cir. 1967) 383 F.2d 680; *Mulligan* v. *United States* (5th Cir. 1958) 252 F.2d 398.)

As for impeding the investigation, respondents raise the point without any explanation of how their own investigation and a disciplinary hearing

---

respondent's Rules specifically provide that the procedures in Rule 3320 for disciplinary hearings (including timing requirements) apply also to combined rescission hearings. (Rule 3324(b).)

would impede. If in some case extraordinary circumstances were such that this might happen, they could be reason for delay up to 30 days.[5]

Respondents speculate that an inmate who faces prosecution for murder may become an unusual escape risk, and that an inmate charged with stabbing another inmate may be subject to reprisal attacks. Yet even in respondents' words those are mere possibilities that "may" occur, not probable risks for all inmates referred to the DA. Such a danger, if shown in a particular case, would be a separate basis for holding an inmate in segregation. (Rule 3330.)

Finally, respondents say they also seek to avoid "any legal problems which might arise due to custodial interrogation of the inmate." They claim that the inmate is not compelled to testify in the disciplinary hearing, because Rule 3320(h) requires a preponderance of evidence for a finding of guilty (*Baxter* v. *Palmigiano* (1976) 425 U.S. 308, 316-320 [47 L.Ed.2d 810, 820-822, 96 S.Ct. 1551]); but nonetheless they contend that they are concerned with avoiding "even the appearance that an inmate is required to make any statements regarding a possible criminal prosecution." We do not consider that an adequate reason to hold an inmate in segregation with no hearing (except in certain instances where he himself may request delay). Further we observe that respondents' interest in preserving the inmate's privilege against self-incrimination could be served by other means—the presence of counsel at the hearing, for instance, or the right to remain silent without any adverse inference drawn therefrom, or immunity. However, we make no determination here as to any of those alternatives since no petitioner here was prosecuted and none complains of being forced to testify.

We note that many of the claimed problems in holding a disciplinary hearing before a decision on prosecution will continue to exist even after 60 days; e.g., if the DA later reverses a decision not to prosecute. We note also petitioners' uncontested assertion that the DA decides to prosecute very few of the referred cases. Further, security reasons for segregating a particular inmate pending the DA decision (e.g., escape or reprisal risk) would still be grounds for segregating that inmate after a disciplinary hearing; segregation in all cases by means of delay in the disciplinary

---

[5]The new Rule 3330(a) permits administrative segregation on the ground of preserving the integrity of an investigation. Segregation without a disciplinary hearing for 60 days in all DA-referral cases under that provision would not be reasonable either, because prison officials would not be justified in assuming that normal housing in every case would impede the investigation.

hearing is accordingly not necessary and is an unreasonable means of handling security problems.

In sum, the fact of DA referral does not in itself justify holding an inmate in segregation without a prison hearing, since legitimate security interests are not necessarily affected by referral alone. Petitioners have no objection to delays due to DA referrals if the inmates are not segregated during that time.[6] But if the inmate is placed in segregation because of disciplinary charges, DA referral does not alter the balance of interests that require a fair hearing on the grounds for segregation within a reasonable time, as defined above.

### Conclusion

Holding inmates in administrative segregation for 33 to 83 days without a hearing on reasons for the segregation violates their due process rights. The potential for prejudice to the inmates is illustrated by the case of petitioner Davis. He was segregated for 57 days on the basis of pending disciplinary charges, though the investigating officer reported after the first day that Davis had not been involved in the incident.

If security requires, prison officials can act under the Rules for administratively segregating an inmate for stated security reasons rather than "pending disciplinary charges." That officials can and do exercise such authority is shown by the fact that, even after their disciplinary hearings, some petitioners here were housed in segregation for security reasons rather than presumed guilt. Thus it appears that security will not be threatened by timely disciplinary hearings. Respondents have not attempted to show the contrary, but have presented only administrative reasons for the delay. Only a minimum of procedural safeguards is required by *Wolff* for such hearings, explicitly so as to accommodate the security needs in the volatile prison environment. (*Wolff, supra,* 418 U.S. at pp. 561-572 [41 L.Ed.2d at pp. 953-960].)

It is clear that inmates placed in segregation have a due process right to a hearing on the grounds for segregation within a reasonable time. To the extent the Rules make an exception for segregation pending DA referrals, they are invalid. But otherwise the Rules establish apparently reasonable time limits, including extension for documented

---

[6]Penal Code section 2932, subdivision (c), provides for a stay of up to 60 days of proceedings to revoke good time credits when the case is referred to the DA. But the statute does not in any way require segregation of the inmate.

extraordinary circumstances. We hold only that the United States Constitution requires respondents to comply with those rules.

The petition for habeas corpus is denied; the order to show cause, having served its function, is discharged.

Bird, C. J., Tobriner, J., Mosk, J., and Manuel, J., concurred.

Richardson, J., concurred in the resulting judgment.

**CLARK, J.**—I concur in the judgment and in the opinion of the court only insofar as it upholds the current rules of the Director of the Department of Corrections.