**John David CONTI, Plaintiff,**

v.

**Glen DYER, Alameda County Sheriff, and the Alameda County Sheriff's Department, Defendants.**

**Nos. C–81–3341 EFL, C–81–4384 EFL, C–81–4391 EFL.**

United States District Court, N.D. California.

Aug. 9, 1984.

John David Conti, pro per.

Timothy J. Murphy, Crosby, Heafy, Roach & May, Kathy M. Banke, Oakland, Cal., for defendants.

LYNCH, District Judge.

This matter is before the court on the defendants' motion for summary judgment. Defendants' motion addresses each of the numerous claims raised in plaintiff's complaint, which is brought under 42 U.S.C. section 1983 and the United States Constitution.[1] This opinion addresses only plaintiff's procedural due process claim. For the reasons stated below, defendants' motion for summary judgment is denied as to the procedural due process claim. Plaintiff's remaining claims are addressed in a separate order; issues relating to the future course of this litigation are also discussed in a separate order.

## I. FACTS

Plaintiff John David Conti was held in administrative segregation while he was a pretrial detainee at the Alameda County Courthouse Jail in Alameda, California. He was housed in the administrative segregation unit, known as the "F tank", from July 31, 1981 to October 30, 1981, with one short interruption. No hearing was held before plaintiff was placed in the F tank, nor were any other formal procedural safeguards observed. Moreover, no hearing was held at any time after plaintiff was placed in the F tank. Defendants assert that plaintiff was held in the F tank because "he was believed to be extremely dangerous to the staff, to be a high escape risk, and because of his frail physical build." Declaration of Wayne W. Maas at ¶ 6.

Plaintiff claims that defendants' failure to provide him with a hearing violated his due process rights under the 14th Amendment. Defendants argue that neither the federal Constitution nor state law affords a pretrial detainee housed in a county jail any right to procedural due process prior to, or within a reasonable time after, his being placed in administrative segregation.

---

1. Plaintiff has brought no pendent state claims under the California Constitution or otherwise.

## II. Discussion

The state must afford an individual certain procedural protections against deprivatory governmental action whenever there is a Fourteenth Amendment property or liberty interest at stake. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although plaintiff has not been deprived of any property interest, his placement in administrative segregation may implicate the Fourteenth Amendment's prohibition against deprivation of liberty "without due process of law." Liberty interests protected by the Fourteenth Amendment may be conferred by either the federal Constitution or by state law. *Meachum v. Fano*, 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–2540, 49 L.Ed.2d 451 (1976). Moreover, the fact that plaintiff is incarcerated does not strip him of all constitutional guarantees. *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).[2]

The issue before the court thus becomes whether plaintiff had a liberty interest, based either on state law or on the federal Constitution itself, in not being placed in administrative segregation. If so, then we must determine what procedures defendants were constitutionally required to observe in order to protect that interest.[3]

### A. Is There a Protected Liberty Interest?

#### 1. The Federal Constitution

The United States Supreme Court recently decided a case very similar to the case at bar. In *Hewitt v. Helms*, 459 U.S. 460, 466–67, 103 S.Ct. 864, 868–869, 74 L.Ed.2d 675, the Court firmly rejected the argument that "the Due Process Clause implicitly creates an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." Therefore, if plaintiff has a liberty interest in not being held in administrative segregation, it must be drawn from state law.

#### 2. California State Law

After reviewing the applicable state regulations and the state court decisions relevant to its interpretation, the court concludes that California state law clearly does give county jail inmates a liberty interest in not being placed in administrative segregation.

##### a. State Regulations Applicable to County Jails

Conditions of confinement in county detention facilities such as the courthouse jail are governed by Title 15, Subchapter 4 of the California Administrative Code. This subchapter is entitled "Minimum Standards for Local Detention Facilities." Section 1053 of Subchapter 4 provides as follows:

> Except in Type IV facilities, each administrator/manager shall provide for the administrative segregation of inmates who are determined to be prone to escape, prone to assault staff or other inmates, or likely to need protection from other inmates, if such administrative segregation is determined to be necessary in order to obtain the objective of protecting the welfare of inmates and staff. Administrative segregation shall consist of separate and secure housing but shall not involve any other deprivation of privileges than is necessary to obtain the objective of protecting the inmates and staff.[4]

As the Supreme Court has recently stated, "[A] State creates a protected liberty

---

2. Plaintiff's status as a pre-trial detainee, rather than a convicted prisoner, also does not diminish his due process rights. "*A fortiori*, pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that [the Supreme Court has] held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).

3. It is important to realize that these are the *only* questions before the court. The court in no way questions the *wisdom* of defendants' decision to hold plaintiff in administrative segregation.

4. Defendants do not contend that the Alameda County Courthouse Jail is a "Type IV facility."

interest by placing substantive limitations on official discretion. An inmate must show that particularized standards or criteria guide the State's decisionmakers." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (opinion of Brennan, J., concurring)).

Section 1053 clearly imposes sufficient substantive limitations on official discretion to meet this standard. First, the regulation, fairly read, states that an inmate may be placed in administrative segregation only if he is determined by the administrator/manager to be "prone to escape, prone to assault staff or other inmates, or likely to need protection from other inmates." Several courts have held that liberty interests were created by regulations with very similar substantive limitations. For example, the Supreme Court in *Hewitt* found that a liberty interest was created by an administrative segregation regulation that permitted segregation "where it has been determined that there is a threat of a serious disturbance, or a serious threat to the individual or others." 459 U.S. 460, 470 n. 6, 103 S.Ct. 864, 871 n. 6. Likewise, in *Wright v. Enomoto,* 462 F.Supp. 397 (N.D. Cal.1976), *summarily aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), a three judge district court found that a liberty interest was created by a California state prison regulation that provided for administrative segregation of inmates "when it is reasonably believed that they are a menace to themselves and others or a threat to the security of the institution." *Id.* at 403.[5]

In fact, the substantive limitations on discretion imposed by section 1053 are much stronger than those present in the regulations involved in *Hewitt* and *Wright.* In addition to a determination that the inmate is prone to escape, prone to assault others, or likely to need protection, section 1053 requires a determination that segregation is *"necessary* in order to obtain the objective of protecting the welfare of inmates and staff." (Emphasis added.) The regulation further constrains official discretion by requiring that "[a]dministrative segregation shall consist of separate and secure housing but shall not involve any other deprivation of privileges than is *necessary* to obtain the objective of protecting inmates and staff." (Emphasis added.)[6]

The absence in section 1053 of mandatory *procedures* such as those present in the regulations considered in *Hewitt* is not dispositive. The Court focussed on the mandatory character of the procedures in response to the argument that a state's "creation of procedural guidelines to channel the decisionmaking of prison officials is ... a salutary development" and that "[i]t would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while states that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause." 459 U.S. at 471, 103 S.Ct. at 871.

Indeed, the touchstone of a protected liberty interest has always been the state's placement of "substantive limitations on official discretion." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747. Thus, despite the elaborate procedural protections afforded by Hawaii in *Olim,* the Court found that no liberty interest was conferred by the regulations because, in the final analysis, no substantive standards governed or restricted the ad-

---

5. It is possible to find in the *Wright* case an alternative holding that the federal Constitution itself creates a liberty interest in not being placed in administrative segregation. Not only has the Supreme Court rejected the general proposition, it has clearly rejected this interpretation of *Wright* and of the Court's summary affirmance of *Wright;* instead, the Court has endorsed the state law holding of the *Wright* case. *See Hewitt,* 459 U.S. at 469, 103 S.Ct. at 870.

6. One of the regulations cited in *Hewitt* did contain a similar standard. However, that regulation concerned only security pending the arrival of the state police; this is not true administrative segregation like that plaintiff endured, and the *Hewitt* Court did not address it. 459 U.S. 460, 470–72 & n. 6, 103 S.Ct. 864, 870–871 & n. 6.

ministrator's determination. 461 U.S. at 249–50, 103 S.Ct. at 1747–48. Moreover, the Court in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) distinguished *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), on precisely this ground. *Wolff* held that Nebraska's statute relating to loss of "good time" created a protected liberty interest because reduction of good time required the *substantive* determination that the inmate was guilty of serious misconduct. 418 U.S. at 558, 94 S.Ct. at 2975. *Meachum* held that the Massachusetts prison transfer statutes did not create a protected liberty interest because the administrator's discretion was not fettered by a substantive standard such as that in *Wolff.* 427 U.S. at 225–28, 96 S.Ct. at 2538–2540. Likewise, *Wright,* following *Meachum* and *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), held that "if the state itself imposes limits on its discretion by conditioning decisions such as prison transfers on a specific standard being met, the state creates a liberty interest which is protected by due process." 462 F.Supp. at 402.

### b.  California Case Law

Even if the presence of some mandatory procedures were necessary to the creation of a protected liberty interest, we would still conclude that plaintiff possesses such a liberty interest. California decisional law interpreting the California Due Process Clause and section 1053 clearly imposes certain minimum procedural requirements on the placement of a county jail inmate in administrative segregation. These procedures are: "(1) a hearing with advance written notice (except in case of a genuine emergency) before initial placement of inmates in administrative segregation, (2) the opportunity to present witnesses and documentary evidence, (3) written reasons for the decision, and (4) counsel-substitute for an illiterate inmate or in a case with complex issues." *Inmates of Sybil Brand Institute for Women v. County of Los Angeles,* 130 Cal.App.3d 89, 108, 181 Cal.Rptr. 599, 609 (1982).

It is of no moment that these requirements are imposed not by state regulations but by state court application of the state constitution.  Our task is to determine whether California law has conferred on a county jail inmate a protected liberty interest in not being placed in administrative segregation.  For this purpose, a federal court must certainly take as state law controlling state court cases, especially those applying the state's highest law—its constitution. *Cf. Olim,* 461 U.S. at 249–50 & n. 10, 103 S.Ct. at 1747–48 & n. 10 (recognizing the primacy of state court interpretation of its own law); *Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–2078, 48 L.Ed.2d 684 (1976) (same).

The defendants nevertheless argue that the decision in *Sybil Brand* is not sound. By asking this court to overrule a California appellate court on a question of state law, defendants ask a great deal.  The limits of federalism will not be tested here, however, because we believe that *Sybil Brand* is sound as a matter of state law and that the California Supreme Court would follow *Sybil Brand* if it had the opportunity.  Because of the importance of this issue to the California county jail system, we will examine in some detail the underpinnings of the *Sybil Brand* decision.

The *Sybil Brand* court *began* its analysis by setting forth the factors that determine *what process is due* under the California Due Process Clause.  The factors that must be considered are

(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible government official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail.

*Sybil Brand,* 130 Cal.App. at 106–07, 181 Cal.Rptr. at 608 (quoting *People v. Ramirez,* 25 Cal.3d 260, 269, 158 Cal.Rptr. 316, 321, 599 P.2d 622, 627 (1979)).

A brief digression into California constitutional law is necessary to an understanding of the significance of the *Sybil Brand* court's *beginning* its analysis with the question of what process is due. In *Ramirez,* the California Supreme Court trenchantly criticized and firmly rejected the federal approach to due process. The federal approach has two steps: first, one inquires whether a protected liberty interest exists; then, one inquires what process is due. The *Ramirez* court developed what is essentially a one-step approach for purposes of the California Due Process Clause:

> This approach presumes that when an individual is subjected to *deprivatory governmental action,* he *always* has a due process liberty interest both in fair and unprejudiced decision making and in being treated with respect and dignity. Accordingly, it places front and center the issue of critical concern, i.e., what procedural protections are warranted in light of governmental and private interests.

*Ramirez,* 25 Cal.3d at 268, 158 Cal.Rptr. at 320, 599 P.2d at 627 (emphasis added). Under federal due process analysis "the determining factor is the nature of the interest involved rather than its weight." *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538. California due process analysis, in contrast, proceeds directly to a weighing of the private and governmental interests involved.[7]

Thus, the *Sybil Brand* court properly began its analysis by setting out the weighing factors from *Ramirez.* The court then looked to *Wright v. Enomoto,* which established procedural requirements for the administrative segregation determination in state prisons. Although the procedures required in *Wright* were more extensive and detailed than those ultimately adopted by *Sybil Brand,* there is substantial similarity. Both cases required (1) a hearing with advance written notice (except in case of a genuine emergency), (2) an opportunity to present witnesses and documentary evidence, (3) written reasons for the decision, and (4) counsel-substitute for an illiterate inmate or for any inmate in a case with complex issues. It is fair to say that the procedures required in *Wright* are no longer required as a matter of *federal* constitutional law. *See Hewitt,* 459 U.S. at 472–77, 103 S.Ct. at 871–874. It was nevertheless entirely proper for the *Sybil Brand* court to look to the *Wright* case for guidance; this is especially so in light of the subsequent adoption of the aforementioned procedures by the California courts.

In *In re Davis,* 25 Cal.3d 384, 391, 158 Cal.Rptr. 384, 389, 599 P.2d 690, 695 (1979), the California Supreme Court held that the procedures listed above were necessary when a prison inmate is placed in administrative segregation because of a pending disciplinary charge. Similarly, the court in *In re Carr,* 116 Cal.App.3d 962, 967–71, 172 Cal.Rptr. 417, 420–23 (1981), after a thorough consideration of the *Ramirez* case and its divergence from federal due process analysis, extended all of the *Wright* requirements to prison inmates prior to a solitary confinement classification. In connection with these cases, the *Sybil Brand* court also noted that the deprivation facing the county jail inmates before

---

**7.** The logic of *Ramirez* is so sweeping that it should apply to "any grievous loss," in stark contrast to the federal approach. *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538; *Hewitt,* 459 U.S. at 467, 103 S.Ct. at 869. At a minimum, however, the *Ramirez* analysis clearly applies to the administrative segregation determination contemplated by section 1053. In *Ramirez* itself the court applied its one-step analysis to an administrative determination under section 3053 of the California Welfare and Institutions

Code. This statute, which is remarkably similar in structure to section 1053, permitted the exclusion of a person from a narcotic detention, treatment, or rehabilitation facility if the "Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such ... facility ...." *See Ramirez,* 25 Cal.3d at 266, 158 Cal.Rptr. at 319, 599 P.2d at 625.

the court was significantly more severe than that facing the prison inmates in *In re Davis.*

Finally, and most importantly, the *Sybil Brand* court added to the scale "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." 130 Cal.App.3d at 108, 181 Cal.Rptr. at 609 (quoting *Ramirez,* 25 Cal.3d at 269, 158 Cal.Rptr. at 321, 599 P.2d at 627). The need to weigh this "dignitary interest" is another aspect of the fundamental difference between California due process analysis and federal due process analysis.

> The federal approach also undervalues the important due process interest in recognizing the dignity and worth of the individual by treating him as an equal, fully participating and responsible member of society.... We therefore hold that the due process safeguards required for protection of an individual's statutory interests must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty.

*Ramirez,* 25 Cal.3d at 267–68, 158 Cal. Rptr. at 320, 599 P.2d at 626–627. See Van Alstyne, *Cracks in "The New Property": Adjudicative Due Process in the Administrative State,* 62 Cornell L.Rev. 445 (1977), and L. Tribe, *American Constitutional Law,* § 10–7, § 10–10 at 526, § 10–12 at 538–39 (1978), for further discussion of the role of "intrinsic" or dignitary interests in due process analysis.

By choosing to make process a substantive element of liberty, California has chosen to make process, to some degree, an end in itself. The federal courts, on the other hand, continue to state unequivocally that "[p]rocess is not an end in itself." *Olim,* 103 S.Ct. at 1748. See Simon, *Liberty and Property in the Supreme Court: A Defense of Roth and Perry,* 71 Calif.L. Rev. 146, 184–90 (1983), for further discussion of the traditional federal approach. Once again, however, our task is to discern

state law. We conclude that the *Sybil Brand* case was correctly decided under California law and that the procedures required therein would also be required by the California Supreme Court. We also conclude that section 1053 of Subchapter 4 of the California Administrative Code and the California Due Process Clause clearly confer on a California county jail inmate a protected liberty interest in not being placed in administrative segregation. This reinforces our earlier conclusion that section 1053 gives rise to a protected liberty interest even under a purely federal analysis of the import of that regulation.

## B. What Process Is Due?

Upon arriving, after our long journey, at the question of what process is due, we find that the question has already been answered. Plaintiff was entitled to the procedures set forth in *Sybil Brand. Ramirez* shows that these procedures are part of the *substance* of his state created right. This federal court can give him no less. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 151–54, 94 S.Ct. 1633, 1642–1644, 40 L.Ed.2d 15 (1974) (plurality opinion of Rehnquist, J.) (incorporating procedural limitations as part of substantive right conferred).

The court recognizes that the Supreme Court in *Hewitt* recently specified minimum procedural requirements for administrative segregation determinations. The Court required only an informal, nonadversary review of the information supporting segregation, including a statement submitted by the inmate, within a reasonable time after confining him to segregation. 459 U.S. at 472, 103 S.Ct. at 871. However, the state created right involved in that case did not carry with it a substantive right to more extensive procedures. The procedures set out in *Hewitt* are merely the minimum that the Constitution can require.

Even if we were to go through the exercise of weighing the factors adopted in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) and applied in *Hewitt,* we would reach the same

 

conclusion. *Mathews* requires consideration of "the private interests at stake in a governmental decision, the governmental interests involved, and the value of procedural requirements." *Hewitt*, 459 U.S. at 473, 103 S.Ct. at 872. California, through its courts, has stated that its governmental interests include freeing the individual from "arbitrary adjudicative procedures" and "recognizing the dignity and worth of the individual by treating him as an equal, fully participating and responsible member of society." *Ramirez*, 25 Cal.3d at 267–68, 158 Cal.Rptr. at 320, 599 P.2d at 626. After placing these important interests on the *Mathews* scale, we again conclude that the procedures set forth in *Sybil Brand* are required by the federal Due Process Clause.

The Supreme Court in *Hewitt* did not intend the minimum procedural requirements of the federal Constitution to be used as a sword to hack away at state created substantive rights. California has made choices and decisions different from those made by the federal system, but "[o]ur system of federalism encourages this state experimentation." *Greenholtz v. Nebraska Prison Inmates*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2107, 60 L.Ed.2d 668 (1979).

## III. Conclusion

■ We conclude that plaintiff was entitled to certain procedural protections before initial placement in administrative segregation. These protections include (1) a hearing with advance written notice (except in case of a genuine emergency), (2) the opportunity to present witnesses and documentary evidence, (3) written reasons for the decision, and (4) counsel substitute for an illiterate inmate or in a case with complex issues.[8] Defendants concede that these procedures were not observed. Instead, defendants have moved for summary judgment on the ground that these procedural protections were not required by the Due Process Clause of the federal Constitution. This court disagrees. Accord-

ingly, the defendants' motion for summary judgment on this issue is denied.

IT IS SO ORDERED.

---

8. Although it appears from plaintiffs' papers that he is literate, the court does not know the complexity of the issues underlying his placement in administrative segregation.