[No. A041480. First Dist., Div. Two. Mar. 17, 1989.]

In re ALEXANDER SEMONS on Habeas Corpus.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Kenneth C. Young, Assistant Attorney General, Morris Lenk and John G. Donhoff, Jr., Deputy Attorneys General, for Appellants.

Donald Specter for Respondent.

OPINION

**SMITH, Acting P. J.**—The warden of San Quentin and the Director of the Department of Corrections (hereafter collectively referred to as the Department) appeal from an order directing that when the Department suspects a prisoner of possessing a controlled substance and a field test of a certain

type has been performed indicating that the substance is controlled, written notice of a charge of possession of a controlled substance must be given to the prisoner within 15 days of the field test under Penal Code section 2932, subdivision (c)(1)[1] (hereafter section 2932(c)(1)).[2] The Department's interpretation of this statute is that the 15-day notice period does not commence to run until it has received a laboratory report confirming that the substance is contraband. We conclude that the trial court erred and reverse the order.

██ Alexander Semons filed the habeas corpus petition herein on October 17, 1986.[3] He alleged that on August 10, 1986, a substance suspected to be heroin was seized from his immediate area in San Quentin, and a field test conducted the next day indicated that the substance was in fact heroin. Twenty-four days later, on September 4, 1986, the suspected contraband was delivered by San Quentin officials to a state laboratory in Marin County, about five miles from the prison. On September 11, the evidence was returned to San Quentin from the laboratory with a report confirming that the substance was heroin. On September 13, 1986, Semons was given written notice of a charge of possession of a controlled substance. At a disciplinary hearing held on September 16, 1986, he was found guilty of the violation charged and was penalized by a loss of 121 days of worktime credit, thus extending his then anticipated release date of October 3, 1986. Semons filed an administrative appeal from this disciplinary action, and the petition herein was filed while that appeal was pending.

Semons alleged in his petition that the discovery of information leading to the charges occurred on August 10, 1986, when the suspected controlled substance was seized, and that consequently the computation of the 15-day notice period under section 2932(c)(1) commenced to run at that time. Since the notice had not been given within 15 days of that date, Semons

---

[1] A 1988 amendment redesignated this subdivision as section 2932, subdivision (c)(1)(A). (Stats. 1988, ch. 1626, § 1, No. 6 Deering's Adv. Legis. Service, pp. 6472-6473.) For convenience, the subdivision is referred to in this opinion as section 2932, subdivision (c)(1), its designation at the time this case was heard in the court below.

[2] This section provides: "The Department of Corrections shall, using reasonable diligence to investigate, provide written notice to the prisoner. The written notice shall be given within 15 days after the discovery of information leading to charges that may result in a possible denial of credit, except that if the prisoner has escaped, the notice shall be given within 15 days of the prisoner's return to the custody of the Director of Corrections. The written notice shall include the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing. The hearing shall be conducted by an individual who shall be independent of the case and shall take place within 30 days of the written notice."

[3] "A writ of habeas corpus may be sought to obtain a declaration and enforcement of a prisoner's rights in confinement. [Citations.]" (*In re Davis* (1979) 25 Cal.3d 384, 387 [158 Cal.Rptr. 384, 599 P.2d 690].)

contended that he was entitled to a writ of habeas corpus.[4] He also alleged that the Department's policy with respect to the timing of notice of charges affected other inmates similarly and requested a declaration of the rights of the parties and an injunction to require the Department to issue CDC Form 115 reports within 15 days of discovery of suspected contraband.

On October 22, 1986, the warden granted Semons's administrative appeal and ordered his 121 days credits restored. The warden found that there had been no justification for "the excessive delay in submitting the suspected substance to an independent laboratory for testing." He went on to state: "Even though the preponderance of evidence supported a guilty finding, the credit loss was inappropriate in accordance with [California Code of Regulations, title 15, section 3320[5]]. I agree you should have received a copy of the alleged charge within 15 days after the discovery of information, but did not receive a copy until 34 days after the alleged violation."[6] Semons' was released from prison on October 25, 1986.

Following the resolution of Semons's administrative appeal, the Department sought to have this proceeding dismissed as moot. Semons contended, however, that the Department continued to unlawfully take the position with respect to other inmates that notice of charges of possession of a controlled substance need not be given until the period within 15 days after receipt of laboratory confirmation of a field test and urged the trial court to rule on the merits. On February 2, 1987, the Department submitted a report to the court which did not deny that it still maintained this position.

[4]Pursuant to California Code of Regulations, title 15, section 3320, subdivision (c)(1), failure to give an inmate a copy of a rule violation report, which is known as CDC Form 115 and is used to provide the notice of charges, within 15 days after the discovery of information leading to the disciplinary charges acts as a bar against denial of behavior and participation credits.

[5]Subdivision (a) of this section requires that normally the CDC Form 115 report of a serious or administrative violation shall be given to the inmate within 30 days of the misbehavior but not later than 15 days from the date of the discovery of information leading to the disciplinary charges. Penal Code section 2932, subdivision (c) provides: "Any procedure not provided for by this section, but necessary to carry out the purposes of this section, shall be those procedures provided for by the Department of Corrections for serious disciplinary infractions if those procedures are not in conflict with this section."

[6]Although Semons is of the view that in granting the appeal the warden agreed with his position that notice of charges must be given within 15 days of seizure of the suspected substance, we do not deem that clear from the record before us. It appears equally, if not more, likely that the warden was applying the provision in the administrative regulation that notice be given within 30 days of the alleged misconduct or that he was conceding that the 24-day delay in sending the substance to the laboratory did not constitute "reasonable diligence to investigate" within the meaning of section 2932(c)(1). The Department in its brief asserts that the warden based his decision upon this delay. We are not unmindful of the possibility that the warden's primary motive in granting the appeal was to moot this law suit brought by Semons.

Following protracted but ultimately unfruitful settlement negotiations not relevant on appeal, the trial court concluded that there was a continuing problem affecting other inmates and decided to rule on the merits. The matter was set for hearing on December 10, 1987, in conjunction with In re Felton Kittling on Habeas Corpus (Marin County Super. Ct. No. 136554)[7] and the trial court effectively treated the matter as a class action.[8]

The pertinent background facts relating to Kittling are similar to those relating to Semons. On September 13, 1987, Kittling was subjected to a body search and an officer confiscated a substance which he believed to be marijuana. The following day a field test was conducted which indicated that the substance was marijuana. On October 9, 1987, the results of a laboratory test confirming the substance to be marijuana were received. On October 15, 1987, Kittling was given notice of charges of possession of marijuana. He was found guilty at a disciplinary hearing held October 16, 1987, and lost 121 days of behavior credits. Had he not lost the credits, he would already have been released from prison at the time of the filing of his petition on or about November 16, 1987.

No evidence was presented at the hearing of December 10, 1987. Counsel and the court engaged in somewhat lengthy discussions. The result of that hearing was an order filed on December 16, 1987, which provided in pertinent part as follows: "It is hereby declared that in those instances where respondent [warden], his agents or employees have reason to suspect a particular prisoner has been or is in possession of a controlled substance, respondent, his agents or employees will have discovered information leading to charges that may result in a possible denial of credit within the meaning of Penal Code section 2932(c)(1) and [California Code of Regulations, title 15, section 3320(c)(1)] when and if [¶] a) a field test of the substance is performed and the result indicates the substance is controlled; and [¶] b) the field test used is accurate in 80-100 percent of the cases in which it has been used." The order was stayed pending appeal. Thus the trial court rejected Semons's contention that the notice of charges under

---

[7] At the request of the Department, we take judicial notice of the pertinent records and proceedings in the Kittling case pursuant to Evidence Code sections 452, subdivision (f), and 459, subdivision (a).

[8] The Department has raised no objection in this court as to the procedure used in the court below. A similar procedure was used in *In re Davis, supra,* 25 Cal.3d 384, where the Supreme Court determined the merits of a challenge to procedures for administrative segregation of inmates pending disciplinary hearings despite the fact that the habeas corpus petitioners were no longer in such segregation. The court there stated: "[A]ll prison inmates in California remain subject to respondents' rules and procedures for placing them in segregation on the basis of disciplinary charges. . . . We therefore exercise our discretion to resolve the issue even though petitioners' subsequent release from segregation 'would normally render the matter moot.' [Citations.]" (*Id.,* at p. 389.)

section 2932(c)(1) must be given within 15 days of the alleged misconduct. It also rejected the Department's contention that the notice period does not commence to run until the receipt of a toxicological report confirming the substance as contraband. The court's intermediate position that a positive field test triggers the notice period was, however, more favorable to petitioner's position than to that of the Department, which filed this timely appeal. There is no cross-appeal, as Semons seeks only to uphold the ruling of the trial court.

The record before us does not provide evidence as to the practices of the Department at the time of the December 10, 1987, hearing. The record does contain representations of counsel indicating the procedures in effect. On February 2, 1987, counsel for the Department submitted a report to the court concerning the status of the administrative policies used in the processing of suspected controlled substances. This report combined with the administrative regulations and provisions of the Department's administrative manual presents the following picture, as to which the parties are apparently in agreement.

The Department has provided by regulation that, with an exception not relevant here, credits shall not be revoked for possession of a controlled substance without laboratory confirmation: "Field testing shall be conducted for 'screening' purposes only. Disciplinary action for possession of a controlled substance shall not include the loss of good time credits unless a toxicological laboratory has confirmed that the suspected substance is in fact a controlled substance . . . ." (Cal. Code Regs., tit. 15, § 3290, subd. (e).) Since such a report is essential to the revocation of credits, the Department's position is that this is the information leading to charges that may result in possible denial of credits for purposes of triggering the notice provision of section 2932(c)(1), rather than the giving of a field test with positive results. Additionally, since charges are not brought in the absence of a positive laboratory test, the Department asserts that this is the "evidence relied upon" which it must specify in the notice required by section 2932(c)(1).

Normally a suspected controlled substance is turned in to San Quentin's Special Security Squad (the Squad) the day it is seized. Sometimes this occurs the following day. A field test is immediately conducted by a member of the Squad. Field testing must be conducted only by trained personnel. (Cal. Code Regs., tit. 15, § 3290, subd. (a).) Only five field tests have been approved by the Department. (Department of Corrections, Admin. Manual, § 1362.) When a field test is negative, the substance is rarely, if ever, sent to the laboratory for testing.

At some point following the administrative appeal by Semons, the Department adopted a policy of sending a correctional officer to deliver and pick up suspected controlled substances at the laboratory at least once a week. Therefore a suspected substance will normally be delivered to the laboratory within seven days of its receipt by prison authorities. Once there, almost 80 percent of substances are tested within 7 days of receipt and over 90 percent are normally tested within 14 days. In approximately 80 percent of cases, the laboratory report should be available to San Quentin officials within 21 days from the time the substance was turned in to them and in over 90 percent of cases, within 30 days. The laboratory toxicological tests are rarely negative as to the existence of a controlled substance.

"We give great deference to the interpretation of a statute by an administrative body authorized to promulgate regulations to promote its purposes, unless that interpretation is clearly erroneous. [Citations.]" (*In re Kelly* (1983) 33 Cal.3d 267, 277 [188 Cal.Rptr. 447, 655 P.2d 1282].) "The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized. [Citations.]" (*Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].) When an administrative agency is construing a controlling statute, the "appropriate mode of review . . . is one in which the judiciary, although taking ultimate responsibility for the construction of the statute, accords great weight and respect to the administrative construction. (See, e.g., Davis, Administrative Law Treatise (2d ed., 1980 pocket supp.) § 29.01-1.)" (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1].)

The Department is charged with the enforcement and interpretation of section 2932(c)(1). Thus the question is whether its interpretation of the notice requirement of that section in the context of disciplinary charges of possession of a controlled substance is clearly erroneous or unauthorized. We conclude that it is not.

Semons contends that the Department should give the notice at the time of a positive field test in order to give an inmate the earliest opportunity within which to prepare his case and to avoid a situation in which an inmate soon to be released remains in prison due to delay in the obtaining of a toxicological report.[9] The Department maintains that its policy is fully

---

[9] Pursuant to Penal Code section 2932, subdivision (g), "[i]f time credit denial proceedings . . . prohibit the release of a prisoner who would have otherwise been released, and the prisoner is found not guilty of the alleged misconduct, the amount of time spent incarcerated, in excess of what the period of incarceration would have been absent the alleged misbehavior, shall be deducted from the prisoner's parole period."

consistent with the provision of section 2932(c)(1) that it "shall, using reasonable diligence to investigate, provide written notice to the prisoner . . . within 15 days after the discovery of information leading to charges that may result in a possible denial of credit," and urges that in any given case the use of reasonable diligence can be challenged on an individual basis, as was done in the case of Semons. The Department correctly points out that its regulation requiring a positive laboratory test for a controlled substance as a prerequisite to the revocation of credits provides significant protection to an inmate that he will not be found guilty of a violation on less reliable evidence. The Department's interpretation of the written notice requirement in these cases is consistent with that regulation, since charges are not brought in the absence of such a positive test, and in no way in conflict with the controlling statute. The trial court apparently agreed with Semons that it would be preferable for the Department to provide written notice of charges upon receipt of a positive field test in order to provide an inmate the opportunity to marshal his defense as early as possible.[10] As we have pointed out the question is not the wisdom of the Department's interpretation but, rather, whether its interpretation is clearly erroneous or unauthorized. It is not.[11]

Semons additionally contends that his position is supported by the fact that in 1988 the Legislature "rejected" a proposed amendment to section 2932(c)(1) which would have permitted a delay in giving notice of charges for up to 90 days to obtain "information that must be known before credit may be denied." This contention has no merit. What actually transpired was that the language in question was amended out of the bill. (See Assem. Amend. to Sen. Bill No. 1989 (1987-1988 Reg. Sess.) Aug. 9, 1988.) The failure of one house to pass a bill or the failure of a bill to emerge from committee is neither a "rejection" of the bill as proposed nor an approval of the status quo ante. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300 [250 Cal.Rptr. 116, 758 P.2d 58].) Furthermore, " '[u]npassed bills, as evidences of legislative intent, have little value. [Citations]' " (*Ibid.*)

We also reject Semons's contention that the trial court's construction of the statute is necessary to preserve its constitutionality. Relying

---

[10] We note that the trial court's construction would not necessarily relieve Semons's concern about soon-to-be-released prisoners languishing in prison, for even if the 15-day notice period commenced to run at the time of the alleged misconduct (even earlier than the receipt of a positive field test), section 2932(c)(1) specifically allows an additional 30 days thereafter during which the disciplinary hearing may be held. Both Semons and Kittling concede that their hearings occurred within the statutory limit—37 days after the misconduct in the case of Semons and 33 days in the case of Kittling. Semons has pointed to no situation in which a hearing was not held within 45 days of the misconduct.

[11] By this determination we do not in any way condone deliberate delay in the obtaining of toxicological reports. It may be that if an actual pattern and practice of unreasonable delay were shown, injunctive relief would be appropriate. No such showing has been made here.

upon *In re Davis, supra,* 25 Cal.3d 384, Semons contends that sustaining of the Department's interpretation of the notice requirement of section 2932(c)(1) will raise constitutional problems because the timing of disciplinary hearings will depend solely on the efficiency of prison staff in transporting suspected controlled substances to and from the laboratory and on the workload of the laboratory. *Davis* is inapposite here. That case held that holding inmates in administrative segregation for 33 to 83 days pending disciplinary hearings violated their due process rights. The court approved applicable rules providing for a 3- to 10-day delay between the filing of charges and the disciplinary hearing, with a delay for as long as 30 days in extraordinary circumstances, as reasonable but found that those rules had not been followed. *Davis* involved disciplinary hearings which could result in a maximum of 10 days punishment. Here, in contrast, the serious violations involved can result in months of lost credits (e.g., approximately four months for both Semons and Kittling). Nothing in *Davis* suggests that there is any constitutional infirmity in a procedure where reasonable diligence is used to obtain a laboratory report and a disciplinary hearing on a charge of possession of a controlled substance is held within 45 days thereafter.[12]

The order of the trial court is reversed.[13]

Benson, J., and Peterson, J., concurred.

Petitioner's application for review by the Supreme Court was denied June 21, 1989.

---

[12] We assume that the procedures represented to the court below are presently being followed by the Department since there is no indication before us to the contrary.

[13] Since we determine that the trial court's order was erroneous as a matter of law, we need not address the Department's contention that the order is not sufficiently precise to provide notice of what is to be done.