Carlos CASTRO, Plaintiff-Appellant,

v.

Cal TERHUNE, Director; Bonnie G. Garibay; J. Batchelor; S.C. Wolhwend; A. Scribner; J. Stokes; M. Yarborough; L. Hood; C. Campbell; A.M. Gonzales; M. Ayala; E. Derusha, c/o; Robert L. Ayers, Warden; J. Martinez, Defendants—Appellees.

No. 00–15286.

D.C. No. CV 98–4877 WHA (PR).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Decided Jan. 9, 2002.

Before KOZINSKI, RYMER, and SILVERMAN, Circuit Judges.

MEMORANDUM *

Carlos Castro appeals the grant of summary judgment for defendant prison officials. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand. Because the parties are familiar with the facts, we will not detail them here except as necessary.

Castro complains that, although he was informed prior to his validation that he was being investigated on charges of being a gang "member," he was ultimately validated and confined to the Security Housing Unit ("SHU") for being a gang

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

"associate." Because Castro was generally advised of the charges against him, he received sufficient notice to satisfy due process. *See Toussaint v. McCarthy,* 801 F.2d 1080, 1100–01 (9th Cir.1986) (noting that, in the administrative segregation context, "the due process clause does not require detailed written notice of charges").

Castro next argues that he received insufficient opportunity to be heard before and after his confinement in the SHU. Castro contends that (1) the Institutional Gang Investigators ("IGIs") are the officials who validate gang affiliations, (2) he did not have an opportunity to meet with the IGIs prior to his validation, and (3) although he has been granted various hearings concerning his willingness to debrief, he has never been given a meaningful opportunity to address the correctness of his validation. The prison officials do not dispute that Castro never met with the IGIs and further admit that "the [Institutional Classification Committee] does not, as a general matter, reexamine the underlying bases of [a prisoner's] validation."

■ Due process entitles a prisoner to an opportunity to present his views to the critical decisionmaker responsible for the administrative segregation decision. *See Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994); *Toussaint v. McCarthy,* 926 F.2d 800, 803 (9th Cir.1990). While Castro is not entitled to a formal judicial hearing or the full range of due process protections, due process does require some notice of the charges against him and a meaningful opportunity to present his views to the critical decisionmakers. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citations and internal quotation marks omitted); *Madrid v. Gomez,* 889 F.Supp.

1146, 1277 (N.D.Cal.1995) (noting that the Institutional Classification Committee "is predisposed to transfer any validated inmate to the SHU," which "underscores the importance of the hearing with the IGI, particularly in light of the Court's finding that the IGI ... is the critical decisionmaker"). Post-deprivation review, however, need not independently reexamine the basis of the validation decision in order to satisfy due process, if the prisoner had a previous opportunity to present his views on the correctness of the validation. *See Madrid,* 889 F.Supp. at 1278 (rejecting a challenge to post-confinement review and upholding the policy by which validated inmates remain at the SHU until they debrief).

Because the district court in its summary judgment order did not address who the critical decisionmakers are, we remand so that the district court can determine (1) which officials actually make the decision to confine prisoners to administrative segregation in the SHU, and (2) whether Castro in fact received a meaningful opportunity to present his views to them on the issue of validation.

■ Castro next argues that the evidence supporting his validation as a gang affiliate is insufficient as a matter of law. We disagree. An administrative segregation decision need only be supported by some evidence in the record. *See Superintendent v. Hill,* 472 U.S. 445, 454–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987) ("The *Hill* standard is minimally stringent.... [T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion ....") (quoting *Hill,* 472 U.S. at 455–56, 105 S.Ct. 2768) (internal quotation marks omitted) (emphasis in original). That deferential standard has been met here.

■■ Castro next argues that he was deprived of his legal property in violation of the First Amendment. Destruction of a prisoner's property is not actionable under 42 U.S.C. § 1983 if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). There is no question that Castro may seek redress under California law for any loss of or destruction to his property. *See Barnett,* 31 F.3d at 816–17 ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy. California Law provides an adequate post-deprivation remedy for any property deprivations.") (citation omitted).

■ Deprivation of an inmate's legal materials by prison authorities, resulting in prejudice to the inmate in proceeding with a legal claim, may be actionable under § 1983. *See Williams v. ICC Comm.,* 812 F.Supp. 1029, 1032 (N.D.Cal.1992) (deprivation of legal papers leaving inmate unable to amend complaint actionable under § 1983); *see also Morello v. James,* 810 F.2d 344, (2d Cir.1987) (alleged confiscation of pro se legal materials by prison authorities was cognizable claim under § 1983). Although Castro argues on appeal that the destruction of his legal materials impeded his access to the courts, we may not address this claim because he did not pursue it in that fashion form in the district court, he only sought compensation for the loss of his property. As redress for such loss exists under state law, Castro's claim regarding the destruction of legal materials is without merit.

■ Finally, Castro argues that the "debriefing" process, by which prisoners leave the SHU, violates his privilege against self-incrimination. Castro is not compelled, however, to debrief; rather, he is given the opportunity to receive more le-nient treatment from prison officials in exchange for information he has concerning gang activity in prison. Denial of this opportunity as a consequence of refusal to debrief thus does not violate Castro's privilege against self-incrimination. *Cf. United States v. Gonzalez,* 897 F.2d 1018, 1020–21 (9th Cir.1990) (acceptance of responsibility in exchange for sentencing reduction does not violate the Fifth Amendment).

REVERSED AND REMANDED.