Jill LANSDALE, Plaintiff–Appellant,

v.

HI–HEALTH SUPERMART CORPO-RATION, Defendant–Appellee.

Jill Lansdale, Plaintiff–Appellee,

v.

Hi–Health Supermart Corporation, Defendant–Appellant.

Nos. 01–16017, 01–16018.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed Dec. 19, 2002.

Stephen G. Montoya, Phoenix, AZ, for the plaintiff-appellant.

Bennett E. Cooper, Steptoe & Johnson, LLP, Phoenix, AZ, for the defendant-appellee.

Before STAPLETON,* O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

## OPINION

FERNANDEZ, Circuit Judge.

Jill Lansdale obtained a verdict against Hi–Health Supermart Corp. for gender discrimination. *See* 42 U.S.C. § 2000e–2(a) (Title VII). She appeals the limitation of her damages pursuant to 42 U.S.C. § 1981a and asserts that the statute is unconstitutional.[1] We affirm.

## BACKGROUND

After she was terminated from Hi–Health, Lansdale brought this action and claimed that Hi–Health, through its owner and president, discriminated against her by establishing a hostile environment based upon her gender. The jury agreed and awarded damages of $100,000 for pain and suffering, mental anguish, shock and discomfort, plus $1,000,000 in punitive damages.

The district court then applied the limitation in 42 U.S.C. § 1981a and reduced

---

\* The Honorable Walter K. Stapleton, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Lansdale asserts a number of other claims and Hi–Health also appeals and asserts addi-tional claims on its own behalf. We address all of those claims in an unpublished memorandum disposition filed this date.

the damage award to $200,000. Lansdale claims that the statutory limitation is unconstitutional and, therefore, appeals from the district court's reduction of the jury award.

## STANDARD OF REVIEW

■ We review the constitutionality of the statute limiting damages de novo. *See Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir.1993). We would only invalidate the statute for "the most compelling constitutional reasons." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

Lansdale's argument that Congress violated the United States Constitution when it placed a damage cap on Title VII recoveries is presented with great vigor, but lacks virtue. Until it enacted 42 U.S.C. § 1981a as a part of the Civil Rights Act of 1991, no future-looking damages or punitive damages whatsoever were available to those who asserted Title VII claims, regardless of whether those claims were based upon race, color, religion, sex, or national origin. However, damages were available in actions under 42 U.S.C. § 1981 for those who could show that they were denied rights "enjoyed by white citizens." In 1991, Congress decided to grant damages to those whose Title VII rights were violated, but it limited (capped) the amount that could be obtained. For employers like Hi–Health, "[t]he sum of the amount of compensatory damages awarded ... for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party ... $200,000." *See* 42 U.S.C. § 1981a(b)(3)(C).

Understandably, many plaintiffs were not satisfied with that partial remedy; they wanted to, and were sure they could, recover much more. Thus, they, like Lansdale, challenged the limitation on constitutional grounds.

We have had occasion to consider and reject some of those challenges. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1200–02 (9th Cir.2002). In so doing, we have pointed out the fact that, "[i]n 1991, Congress determined that victims of employment discrimination were entitled to additional remedies. But, as legislative history makes clear, the 1991 Act would not have been passed by Congress *but for* the inclusion of a ... damages cap." *Id.* at 1201 (citation omitted). We also ruminated on the legislative process and said:

> However, Congress has significant power to define and circumscribe self-created causes of action. Indeed, almost two decades ago, the Supreme Court articulated a vital distinction between common law causes of action and actionable rights created by Congress. Specifically, the Court noted that
>
>> when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies.... Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress's power to define the right that it has created.

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Title VII epitomizes such a congressionally created right....

*Id.* at 1200. Based upon that, we definitively rejected the claims that Lansdale now makes based upon violation of the Separation of Powers Doctrine and invasion of the province of the jury in violation

of the Seventh Amendment to the United States Constitution. *Id.* at 1200–02.

■ Nevertheless, argues Lansdale, the cap does violate the Equal Protection and Due Process clauses of the United States Constitution.[2] But, again, as we said in *Hemmings,* 285 F.3d at 1200–01, Congress does have the authority to prescribe, and limit, remedies. Beyond that, it is common knowledge that Congress is not required to solve every facet of a societal problem at the same time,[3] and we defer to its decisions, even (or especially) compromises allocating the benefits and burdens arising out of our engagement in commercial life. *See Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963); *see also Lyon v. Agusta S.P.A.,* 252 F.3d 1078, 1086–88 (9th Cir.2001). "Of course, the legislature must act in a rational manner; that almost goes without saying." *Lyon,* 252 F.3d at 1086. But there is nothing arbitrary or irrational about § 1981a. It certainly does not set up a facially invalid classification on the basis of gender. On the contrary, it treats all groups within its compass in the same manner. *See Madison v. IBP, Inc.,* 257 F.3d 780, 805 (8th Cir.2001), *vacated on other grounds,* —— U.S. ——, 122 S.Ct.

2583, 153 L.Ed.2d 773 (2002). All are subject to its damage cap.

Thus, it is clear "that the statute must stand if it bears a rational relationship to any legitimate articulated government purpose." *Pollard v. E.I. DuPont de Nemours Co.,* 213 F.3d 933, 946 (6th Cir.2000), *rev'd on other grounds,* 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); *see also Madison,* 257 F.3d at 805. It does.[4] As we indicated in *Hemmings,*[5] and as other courts have declared: "In a political compromise, the Civil Rights Act of 1991 was limited in the remedies which it would provide due to a belief that unlimited damages for all forms of discrimination would force employers to institute hiring quotas for their own economic safety." *Pollard,* 213 F.3d at 946. Moreover, "Congress instituted the damages limitation in order to deter frivolous lawsuits and to protect employers from financially crippling awards, and the limitation is rationally related to these legitimate purposes." *Madison,* 257 F.3d at 805. This case underscores the basis for Congress's concern. While the jury awarded no out of pocket damages, it did award Lansdale $100,000 in damages for pain and suffering, mental anguish, shock and discomfort, and then

2. Of course, the equal protection argument is, of necessity, a due process argument because it is a federal statute that we are dealing with. *See Vance v. Bradley,* 440 U.S. 93, 94 n. 1, 99 S.Ct. 939, 941 n. 1, 59 L.Ed.2d 171 (1979); *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 695, 98 L.Ed. 884 (1954). We will hereafter refer to equal protection principles only. Lansdale cites nothing to the contrary. If she did wish to make a different point, she has waived it by not briefing it. *See Brookfield Communications, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 n. 7 (9th Cir. 1999).

3. *See Denver Area Educ. Telecomms. Consortium, Inc. v. FCC,* 518 U.S. 727, 757, 116 S.Ct. 2374, 2393, 135 L.Ed.2d 888 (1996).

4. Lansdale has not presented any substantial evidence that Congress intended to discriminate against women when it enacted § 1981a(b)(3). On the contrary, it clearly acted to increase the rights of everyone who brought actions under Title VII, including women. Thus, we do not use intermediate scrutiny in our analysis. *See Personnel Adm'r v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *Navarro v. Block,* 72 F.3d 712, 716 (9th Cir.1996); *Toomey v. Clark,* 876 F.2d 1433, 1436 n. 2 (9th Cir.1989). Were we to do so, we are satisfied that the statute would also pass that level of review for much the same reasons as it passes rational basis review.

5. 285 F.3d at 1201.

went on to award her a whopping $1,000,000 in punitive damages.

Finally, despite Lansdale's suggestion to the contrary, Congress was hardly required to limit the already existing § 1981 rights of those who claimed that they had been subjected to race discrimination, whether in the workplace or elsewhere, in order to give some additional rights to others. *See Pollard,* 213 F.3d at 946. It would be middling strange to hold that protecting both genders against race discrimination somehow discriminates on the basis of gender unless the exact same protection is accorded when gender discrimination alone is involved. That appears to be a most unusual mixing of categories.[6] Beyond that, we fail to see why Congress cannot show special concern for those who are subjected to race discrimination. In fact, race discrimination has been one of the most disruptive elements in our national life since the founding of our republic, and attempts to overcome all vestiges of that evil have formed "the cornerstone of our entire body of civil rights law." *Id.* Of all the vile types of discrimination, courts and Congress have treated race discrimination as the most vile of all.[7]

## CONCLUSION

Congress made a laudable decision when it expanded the scope of recovery for those who are subjected to discrimination in employment. We cannot say that it also violated the Constitution of the United States when it chose to limit the amount of damages that could be recovered, even if it did not go on to limit damages recoverable under 42 U.S.C. § 1981.

6. It would not key on discrimination between men and women, or between one race and another, but, rather, on discrimination between race and women.

7. For example, laws that discriminate on the basis of race are subjected to the highest level

It is not at all surprising that Lansdale wants even more than Congress provided; that is just the working out of one of human nature's quotidian drives. However, she must be content with her six figure judgment, faute de mieux.

AFFIRMED. The parties shall bear their own costs on appeal.

of scrutiny. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 224, 115 S.Ct. 2097, 2111, 132 L.Ed.2d 158 (1995).