**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLOS CASTRO,
*Plaintiff-Appellant*,

v.

CAL TERHUNE; G. BONNIE GARIBAY;
J. BATCHELOR; S. C. WOLHWEND;
ROBERT L. AYERS, JR., Warden; A.
SCRIBNER; J. STOKES; E. DERUSHA,
Correctional Officer; MICHAEL G.
YARBOROUGH, Warden; L. HOOD; C.
CAMPBELL; A. M. GONZALES; M.
AYALA; J. MARTINEZ; A. JORDAN,
*Defendants-Appellees*.

No. 11-16837

D.C. No.
3:98-cv-04877-
WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
February 13, 2013—San Francisco, California

Filed April 5, 2013

Before: Jerome Farris, Sidney R. Thomas, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed the district court's order terminating a prisoner civil rights action which challenged the prisoner's validation as an associate of the Mexican Mafia prison gang.

The panel rejected the prisoner's "void-for-vagueness" challenge to Cal. Code Regs. tit. 15, § 3378 (c), an administrative regulation that guides prison officials in validating inmates as gang affiliates. The panel held that section 3378(c) clearly indicated that the prisoner's conduct in this case could result in validation. Further, the panel held that although the district court should have evaluated whether the prisoner was validated based on "some evidence," remand was not required to correct the error. The panel determined that the evidence in the record showed that prison officials relied on "some evidence" to validate the prisoner as an associate of the Mexican Mafia gang and that the validation procedure satisfied the requirements of the district court's prior Remedial Order.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James E. Burns, Jr., James E. Thompson (briefed and argued), and Jennifer N. Nejad (argued), Orrick Herrington & Sutcliffe LLP, San Francisco, California, for Plaintiff-Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolff, Senior Assistant Attorney General, Thomas S. Patterson, Supervising Deputy Attorney General, Brendan M. Kenny, Deputy Attorney General (briefed), and Jose Zelidon-Zepeda, Deputy Attorney General (argued), San Francisco, California, for Defendants-Appellees.

**OPINION**

N.R. SMITH, Circuit Judge:

Under the "void-for-vagueness" doctrine, due process requires enactments to be written with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Cal. Code Regs. tit. 15, § 3378(c)(4), an administrative regulation that guides prison officials in validating inmates as gang affiliates, satisfies both requirements. Due process also requires such validations to be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). Here, the district court erred, because it did not evaluate whether "some evidence" supported Castro's validation as a prison gang "associate." Nevertheless, we

affirm, because the record contains "some evidence" that Castro is an "associate" of the Mexican Mafia prison gang.

## FACTS & PROCEDURAL HISTORY

### I.  California's Regulatory Framework

California's prison regulations require an inmate to be placed in administrative segregation whenever he or she "presents an immediate threat to the safety of the inmate or others."  Cal. Code Regs. tit. 15, § 3335(a) (2013).  An inmate who affiliates with a prison gang presents such a threat.  *Madrid v. Gomez*, 889 F. Supp. 1146, 1241 (N.D. Cal. 1995).  California's prison regulations recognize two degrees of gang affiliation: (1) "member," and (2) "associate."  Cal. Code Regs. tit. 15, § 3378(c)(3)–(4).  "[O]nce [prison officials] determine[] that an inmate is a member or associate of a prison gang, the inmate is routinely transferred to administrative segregation in the [Security Housing Unit (SHU)]."  *Madrid*, 889 F. Supp. at 1241.  Prison officials follow a multi-step administrative process, known as "validation," to classify an inmate as a gang "member" or "associate."  *See id.* at 1241–43.

Here, Castro brings only a facial challenge to the definition prison officials use to validate inmates as gang associates.  "An associate is an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang."  Cal. Code Regs. tit. 15, § 3378(c)(4).  Prison officials must show such involvement by "three (3) independent source items of documentation indicative of association with validated gang members or associates."  *Id.*  Of those source items, one must be a "direct link to a current or former validated member or associate of the gang."  *Id.*

## II. Castro's Validation

On April 24, 1997, prison officials validated Castro as an "associate" of the Mexican Mafia, a recognized prison gang. Officials then transferred him to the SHU at Pelican Bay State Prison. In 1998, he filed suit in the United States District Court for the Northern District of California, challenging his validation on due process grounds.

The district court granted defendants' motion for summary judgment. On appeal, we reversed and remanded. *Castro v. Terhune*, 29 F. App'x 463, 466 (9th Cir. 2002). We opined that due process required prison officials to give Castro an opportunity to present his views to the "critical decisionmaker." *Id.* at 465. Accordingly, we remanded so the district court could determine (1) what prison official was the critical decisionmaker, and (2) whether Castro had an opportunity to present his views to that official. *Id.*

On remand, the district court entered summary judgment for the defendants on both issues. It concluded that Institutional Gang Investigator ("IGI") Michael Ayala was the critical decisionmaker, and that Castro had an opportunity to present his views to IGI Ayala. Castro then appealed the district court's summary judgment decision. We again reversed and remanded, finding that genuine issues of fact precluded summary judgment. *Castro v. Terhune*, 237 F. App'x 153 (9th Cir. 2007).

On remand, the district court held a bench trial. It concluded that (1) IGI *Gonzalez* was the "critical decisionmaker," and that (2) there was no evidence in the record that Castro had an opportunity to present his views before any member of the IGI's office during his 1997

validation. Accordingly, the district court found that Castro did not receive due process in his initial validation procedure. Based on that finding, the district court granted Castro prospective relief in a Remedial Order, pursuant to the Prisoner Litigation Reform Act, 18 U.S.C. § 3626.

The Remedial Order required California prison officials to determine "whether [Castro] is a gang associate now, not in 1997 or 2009 (or any other time)" based on a new validation procedure. Pursuant to the Order, California prison officials conducted a new procedure between December 17, 2010 and April 19, 2011. David Barneburg (an IGI at Pelican Bay State Prison) began the process by "review[ing] Castro's central file to determine whether it contained items showing gang activity." His review revealed several items indicating gang affiliation. Barneburg then searched Castro's cell, but did not discover any new evidence of gang activity there. He also photographed Castro. After concluding this review, Barneburg sent Castro a description of the evidence that could support Castro's validation as an associate.

Barneburg then conducted Castro's "validation interview" on January 24, 2011. At the interview, Barneburg went over the evidence of Castro's gang involvement he had collected. Castro's attorney also made a presentation to Barneburg and submitted a binder containing "sixty-six pages of argument and 392 pages of exhibits," challenging the reliability of the evidence Barneburg produced. The interview lasted nearly three hours.

After the interview, Barneburg reviewed the evidence, his own notes, and Castro's written submissions. He then prepared a thirteen-page document, recommending that Castro be validated as an associate of the Mexican Mafia

prison gang. In that document, Barneburg cited the following items as evidence showing Castro had been involved with the Mexican Mafia: (1) a drawing, previously found in Castro's cell, which depicted the "Shield of the Eternal Warrior" (an image commonly identified with the Mexican Mafia); (2) testimony of an inmate contained in a debriefing report, identifying Castro as the gang member who supervised the inmate's portion of the prison; (3) a hand-drawn birthday card for a validated Mexican Mafia associate, which Castro had signed; (4) two drawings containing the "Mactlactlomei" symbol, which is distinctively identified with the Mexican Mafia gang; and (5) a statement in a second debriefing report, implicating Castro in a gang-related plot to stab an inmate.[1] Barneburg also rejected three source items, because they were unreliable.

Barneburg then submitted the foregoing information in Castro's "gang-validation package," along with his recommendation to validate, to the Office of Correctional Safety (OCS). The OCS ultimately determines whether to validate an inmate as a prison-gang affiliate. *Cf. Madrid*, 889 F. Supp. at 1275–76. Thus, on April 19, 2011, the OCS validated Castro as a "prison-gang associate" for a second time, based on the package Barneburg submitted.

Following Castro's re-validation, defendants filed a motion in district court to terminate the case. After reviewing the validation procedure that defendants had followed, the district court concluded that the process satisfied the

---

[1] Both the statement by the first confidential informant and the birthday card provided a necessary "direct link to a current or former validated member . . . of the gang," in satisfaction of title 15, section 3378(c)(4) of the California Code of Regulations.

requirements of the Remedial Order, and terminated the action in an Order Terminating Action (Termination Order). Castro then filed the instant appeal from the Termination Order.

## DISCUSSION

On appeal, Castro asks us to vacate the Termination Order on three grounds. First, he argues that his 2011 validation procedure did not comport with due process, because the definition of "associate" in the prison regulations used to validate him is "unconstitutionally vague." Second, he claims that he did not receive due process, because the district court did not evaluate whether the evidence used to validate him met the "some evidence" standard. Third, he argues that the district court failed to determine that he is a prison gang associate "now." We affirm.

## I.   Section 3378(c)(4) is not unconstitutionally vague.

Castro argues that the definition of "associate" in Cal. Code Regs. tit. 15, § 3378(c)(4) is unconstitutionally vague.[2] We analyze a challenge to the constitutionality of a regulation de novo. *See Landsdale v. Hi-Health Supermart Corp.*, 314 F.3d 355, 357 (9th Cir. 2002). Assuming inmates can

---

[2] Defendants argue that Castro waived his vagueness challenge, because he did not raise it in his complaint. However, a party only waives an issue by failing to raise it "below." *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). A party could raise an issue below, even if he does not raise it in his complaint. *See Beets v. Cnty. of L.A.*, 669 F.3d 1038, 1043 (9th Cir. 2012) (implying that argument could be raised "below" if raised in motion to dismiss). Since Castro argued vagueness in his motion opposing termination of prospective relief, he has not waived it.

challenge prison administrative regulations on vagueness grounds, section 3378(c)(4) satisfies the requirements of due process.

Castro does not cite to any cases that have found prison administrative regulations to be unconstitutional under the void-for-vagueness doctrine.   Instead, he cites to cases applying the doctrine to criminal and penal statutes. *Kolender*, 461 U.S. at 357; *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926).  Nevertheless, we will assume that the void-for-vagueness doctrine applies to prison administrative regulations.  *Cf. Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (applying *Turner v. Safley*, 482 U.S. 78 (1987) to vagueness challenge to prison regulation prohibiting receipt of certain types of mail).  In doing so, we are mindful that "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment."  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  Unlike both penal statutes and prison disciplinary regulations,[3] this prison administrative regulation does not impose sanctions for, or necessarily prohibit, any conduct.  Rather, it serves as a guide to channel the discretion of prison officials who must decide how to best allocate inmates among prison housing units.  *See Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997) (noting that prison housing decisions are "essentially a matter of administrative discretion" and that "California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed

---

[3] Some courts have applied vagueness analysis to prison disciplinary regulations.  *See Newell v. Sauser*, 79 F.3d 115, 117–18 (9th Cir. 1996) (citing cases).

to preserve order in the prison and protect the safety of all inmates").

Though Castro's challenge is unclear, he appears to argue that section 3378(c)(4) is invalid on its face, rather than only as-applied to him. "Outside the First Amendment context, a plaintiff alleging facial vagueness must show that the enactment is impermissibly vague in all its applications." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal quotation marks omitted). Here, Castro specifically disclaims any argument that section 3378(c)(4) affects his First Amendment right to associate with other inmates; rather, he alleges that its vagueness infringes on his "right to be free from solitary confinement." Thus, to succeed on his vagueness claim, Castro must show that section 3378(c)(4) would be impermissibly vague in all its applications.

To survive a vagueness challenge, section 3378(c)(4) must define "associate" (1) with sufficient definiteness that "ordinary people can understand what conduct [can be used as evidence of association]," and (2) "in a manner that does not encourage arbitrary and discriminatory [validation]." *Kolender*, 461 U.S. at 357; *Hoffman Estates*, 455 U.S. at 498. Because Castro must show that section 3378(c)(4) is invalid in all its applications, he must first show that the regulation fails both prongs in the context of his own validation. *See Hoffman Estates*, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." (footnote omitted)). Castro cannot make this showing; he engaged in conduct that section 3378(c)(4) clearly indicates

could be used as evidence of gang involvement, and he has not shown that prison officials engaged in arbitrary and discriminatory conduct when validating him.

## A.  Definiteness

Under the first factor, section 3378(c)(4) and its accompanying regulations would have clearly indicated to Castro that his conduct could be used as evidence in support of validation.  Section 3378(c)(4) defines "associate" as "an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang."  Cal. Code Regs. tit. 15, § 3378(c)(4).  To show such involvement, prison officials must rely on "at least three (3) independent source items of documentation indicative of association with validated gang members or associates."  *Id.*  Section 3378(c)(8) specifies what types of evidence may be used as these source items.  These include tattoos and symbols, written material, photographs, and "information related to the [inmate's] association with validated gang affiliates" including "addresses, names, identities, and reasons why such information is indicative of association with a prison gang." *Id.* § 3378(c)(8)(B), (C), (D), (G).  If a source item does not categorically evidence gang affiliation or activity, prison officials may only rely on it if they can articulate how that item provides such evidence.  *See generally id.* § 3378(c)(8).

Here, prison officials relied on several source items to validate Castro as an "associate."  First, Castro possessed drawings and artwork that contained symbols and imagery commonly identified with the Mexican Mafia gang.  Second, Castro signed a birthday card for a validated associate of the Mexican Mafia.  The other prisoners who signed the card were also either validated Mexican Mafia associates, or

suspected associates of the gang. Third, a confidential informant testified that Castro had been the member of the Mexican Mafia in charge of supervising the prison block where he was housed. Fourth, another confidential informant testified that Castro had been involved in a gang-related plot to kill an inmate. Each of these source items indicates Castro's involvement with the Mexican Mafia. As section 3378(c)(8) authorizes prison officials to validate inmates based on this type of evidence, the regulation clearly advised Castro that his conduct could result in validation. Accordingly, Castro's facial vagueness challenge must fail.

Castro specifically attacks the terms "involved," "periodically," and "regularly" in section 3378(c)(4)'s definition of associate. However, even if these terms "contain germs of uncertainty," *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973), they do not make the regulation vague. None of these terms are defined in the statute, so we will give them their "ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) ("In the absence of [a definition in the statute], we construe a statutory term in accordance with its ordinary or natural meaning."). We can determine this meaning by looking to "general usage dictionaries." *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

To become "involved" is to "relate closely." Webster's Third New International Dictionary 1191 (1993). "Periodically" means "at regular intervals of time" or "from time to time." *Id.* at 1680. "Regularly" means in a way that is "steady or uniform in course, practice or occurrence." *See id.* at 1913. At a minimum, the source items used to validate Castro show that he related closely with the Mexican Mafia prison gang on more than one occasion by (1) participating in

a gang-related violent plot, (2) serving as a gang-commissioned supervisor, and (3) collaborating with validated gang associates to send a birthday card to another validated gang associate.    Because the terms Castro challenges plainly describe his involvement with the Mexican Mafia, his argument that they make the regulation vague fails. *Hoffman Estates*, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Castro argues that we should find section 3378(c)(4) to be vague, because we held a similar definition to be vague in *United States v. Johnson*, 626 F.3d 1085, 1091 (9th Cir. 2010).  There, we invalidated a condition of the defendant's supervised release, which stated that "The defendant may not associate with anyone known to him to be a Rollin' 30's gang member *or persons associated with the Rollin' 30's gang*." *Id.* at 1090 (emphasis added).   We concluded that the prohibition on associating with persons who "associate[] with" the gang was "impermissibly vague." *Id.* at 1090–91. That condition was so broad that it forbade the defendant from associating with any person "associated with" the gang, even if the nature of the association was not gang related. Thus, the defendant could violate the condition of supervised release merely by "associating" with someone who had "only a social connection to an individual gang member." *Id.* at 1091.  We invalidated the term of supervised release due to this condition's breadth. *Id.*

Section 3378(c)(4) differs from the supervised release condition at issue in *Johnson* in two important respects.  First, prison officials, without more, cannot validate inmates based on a mere "social connection to an individual gang member."

*Cf. Johnson*, 626 F.3d at 1091.   Any connection must evidence affiliation or association with a gang to be used as a source item supporting validation.  *See* Cal. Code Regs. tit. 15, § 3378(c)(8)(G).

Second, the Constitution provides greater protection for the free association rights of a defendant on supervised release than it does for the free association rights of a prison inmate.  In the supervised release context, "[a] restriction on a defendant's right to free association" must "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve "the goals of deterrence, protection of the public, and/or defendant rehabilitation."  *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007).   Prison regulations affecting the right to free association (which arguably includes section 3378(c)(4)) need not meet a "least restrictive means" test.  Rather, prison regulations generally only need to be "rational[ly] relat[ed] to legitimate penological interests."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Turner*, 482 U.S. at 90 (rejecting proposition that prison regulations are subject to "least restrictive alternative" test).  This distinction is consistent with the principle that "freedom of association is among the rights least compatible with incarceration."  *Overton*, 539 U.S. at 131.  Accordingly, even if section 3378(c)(4) did put an inmate's social connections at risk to the same degree as the condition of supervised release invalidated in *Johnson*, we would not reach the same result here.

In sum, section 3378(c)(4) and its associated regulations are sufficiently definite to notify Castro that his conduct could be used as evidence of his gang involvement, supporting his validation as an associate.   Therefore, it survives the first element of vagueness analysis.

**B. Arbitrary & Discriminatory Enforcement**

Under the second factor, Castro has not produced any evidence that prison officials applied section 3378(c)(4) in an arbitrary or discriminatory way when they validated him. By relying on five source items to validate Castro, prison officials had more evidence supporting Castro's validation than state regulations require. Cal. Code Regs. tit. 15, § 3378(c)(4) (requiring "three (3) independent source items of documentation indicative of association with validated gang members or associates"). Each source item fit within a category of evidence that the regulations authorize prison officials to use. *See generally* Cal. Code Regs. tit. 15, § 3378(c)(8)(A)–(M). Prison officials followed the procedures required by regulation and the district court's Remedial Order. In short, there is no evidence that section 3378(c)(4) was applied to Castro in an arbitrary or discriminatory manner.

Castro cites to the deposition testimony of several prison officials as evidence that section 3378(c)(4) presents a *risk* of arbitrary and discriminatory enforcement. This testimony relates primarily to each deponent's own, personal conclusion about the characteristics of an inmate who might qualify as a prison gang associate in the abstract. Accordingly, this testimony is irrelevant here, because it does not show how prison officials applied the definition of associate to Castro. Barneburg recommended Castro's validation based on section 3378(c)(4)'s definition of associate—not on the personal definition recited by any prison official in deposition testimony.

In sum, section 3378(c)(4) is not vague in violation of the Due Process Clause.  An ordinary inmate would know that Castro's conduct could have been used as evidence to validate him as an associate of the Mexican Mafia.  There is no indication that prison officials were arbitrary or discriminatory when validating Castro.  Accordingly, we reject Castro's vagueness challenge.

## II. "Some evidence" supports Castro's validation as an associate of the Mexican Mafia.

Next, we address whether the district court should have determined whether there was "some evidence" to support Castro's validation as a prison gang associate.  This is a question of law.  Accordingly, we review the district court's decision not to engage in a "some evidence" inquiry de novo. *See Granados-Oseguera v. Mukasey*, 546 F.3d 1011, 1014 (9th Cir. 2008).  Although we conclude that the district court should have engaged in a "some evidence" inquiry, remand is unnecessary.  The evidence in the record clearly satisfies the low "some evidence" standard.

Due process guarantees Castro that the evidence used to validate him meet the "some evidence" evidentiary standard. *See Bruce*, 351 F.3d at 1287.[4]  The district court did not

---

[4] The parties disagree over whether, under *Swarthout v. Cooke*, due process requires that the evidence of Castro's prison gang association be tested by the "some evidence" standard.  131 S. Ct. 859 (2011).  In *Swarthout*, the Supreme Court rejected the argument that the due process clause required there to be "some evidence" to deny an inmate parole. 131 S. Ct. at 861–63.  However, *Swarthout* involved a "some evidence" standard imposed in parole revocation proceedings by California state law, rather than the "some evidence" standard that federal due process law imposes on Castro's validation procedure. *Compare id.* at 862 *with*

evaluate whether the evidence used to validate Castro in 2011 met this standard, because it believed that the Remedial Order only granted Castro a procedural remedy, and that the "some evidence" analysis was a substantive requirement.  However, the "some evidence" requirement is an "evidentiary standard." *Hill*, 472 U.S. at 456.  As such, procedural, not substantive, due process guarantees inmates that their validation will be based on some evidence. *See Santosky v. Kramer*, 455 U.S. 745, 757 (1982) (discussing standards of proof as procedural due process rules).  Thus, the district court erred when it did not evaluate whether there was "some evidence" that Castro is a prison gang associate.

The district court is best positioned to consider, in the first instance, whether "some evidence" supported Castro's validation.  Under the unique circumstances of this case, however, the record is adequately developed such that "no rational jury" (or jurist) could find for Castro. *See Dennis v. BEH-1, LLC*, 504 F.3d 892, 896 (9th Cir. 2007), *amended and superseded on other grounds by* 520 F.3d 1066 (9th Cir. 2008).  Accordingly, it would be "pointless" for us to vacate and remand for that determination. *Id.*

"Some evidence" review requires us to ask only "whether there is *any evidence* in the record that could support the conclusion." *Bruce*, 351 F.3d at 1287 (emphasis added). This test is "minimally stringent." *Powell v. Gomez*, 33 F.3d

---

*Toussaint v. McCarthy*, 801 F.2d 1080, 1104 (9th Cir. 2001).  Indeed, Justice Ginsburg—concurring in *Swarthout*—highlighted the distinction between these two standards. *Id.* at 863 (Ginsburg, J., concurring).

39, 40 (9th Cir. 1994). Accordingly, "we do not examine the entire record, independently assess witness credibility, or reweigh the evidence." *Bruce*, 351 F.3d at 1287. Evidence only must bear "some indicia of reliability" to be considered "some evidence." *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990). Moreover, evidence may qualify as "some evidence," even if it does not "logically preclude[] any conclusion but the one reached." *Hill*, 472 U.S. at 457.

In *Bruce*, we addressed the issue of whether "some evidence" supported the validation of an inmate as a gang member. 351 F.3d at 1287. The inmate had been validated based on (1) police reports that he was a gang affiliate, (2) a probation report noting that his co-defendant was validated as a member of the same gang, and (3) the statement of a confidential prison informant. *Id.* at 1287–88. Indicating the low hurdle that the "some evidence" standard sets, we held that "any of these three pieces of evidence would have sufficed to support the validation because each has sufficient indicia of reliability." *Id.* at 1288. Accordingly, we held that there was "some evidence" to support the inmate's validation.

Here, OCS officials validated Castro based on five pieces of evidence: (1) a hand-drawn picture that contained a gang-related symbol, found in Castro's prison cell; (2) a photocopied image that contained a gang-related symbol, also discovered in Castro's cell; (3) a birthday card for another inmate who was a validated member of the same gang, which Castro had signed; and (4) two de-briefing reports, in which other inmates testified that Castro was involved in gang-

related activities. The two pictures containing gang-related symbols meet the some evidence standard. Possessing pictures containing gang-related symbols indicates that the possessor is involved with the gang. The birthday card is also some evidence of gang involvement. Each inmate who signed it was a validated associate (or suspected associate) of the Mexican Mafia. Other inmates who resided in the same cell area, but were not part of the Mexican Mafia, did not sign the card even though they could have. Finally, Castro and the other inmates sent the card to a validated gang associate. These characteristics make the card some evidence of Castro's involvement with the Mexican Mafia. Because we are only reviewing the record for "some evidence" to support Castro's validation, the possibility that these items could support competing inferences does not affect our conclusion. *Hill*, 472 U.S. at 457.

The debriefing reports are also some evidence of Castro's gang affiliation. The inmates being debriefed testified from personal knowledge regarding Castro's involvement in gang-related activities.

The foregoing review demonstrates that prison officials had "some evidence" that Castro was periodically involved with the Mexican Mafia. Accordingly, although we agree with Castro that the district court should have conducted this analysis in the first instance, we see no reason to remand so that the district court can address it now. *Dennis*, 504 F.3d at 896.

**III.     Castro's 2011 validation procedure satisfied the Remedial's Order's requirement that Castro be determined to be a prison gang associate "now."**

Finally, Castro argues that his 2011 validation process did not satisfy the terms of the Remedial Order, because the evidence used to validate him was too old to prove he was a gang associate "now." Castro misreads the Remedial Order. While the Order instructed prison officials to determine whether Castro was a gang associate "now," it specifically noted that earlier evidence is not "inadmissible in the new validation process." Further, the Order required that the remedial validation "follow state and CDCR regulations." Those regulations do not specify the maximum age of a source item, except in a few instances that are not relevant here. *E.g.*, Cal. Code Regs. tit. 15, § 3378(c)(8)(D) (photos cannot be more than six years old); *cf. id.* § 3378(e) (implying that source items up to six years old are relevant indicators of gang affiliation, because a validated inmate may be re-classified as "inactive" if he does not engage in any gang activity for six). The age of the source items could affect the weight of the evidence. But, at this stage, we may not re-weigh the evidence. *Bruce*, 351 F.3d at 1287. Moreover, Castro has not produced any affirmative evidence that he is no longer involved with the Mexican Mafia. Accordingly, we reject his claim that his 2011 validation did not satisfy the requirements of the Remedial Order.

## CONCLUSION

Castro's vagueness challenge fails, because section 3378(c) clearly indicated to him that his conduct could result in validation. Further, although the district court should have evaluated whether Castro was validated based on "some

evidence," remand is not required to correct the error. The evidence in the record shows that prison officials relied on "some evidence" to validate Castro as an associate of the Mexican Mafia gang.

**AFFIRMED.[5]**

---

[5] Castro's motion to supplement the record on appeal is DENIED. The declaration he offers was not part of the district court record and, therefore, is not properly part of the record on appeal. *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988). Accordingly, Defendants' motion to strike the declaration, and the portions of Castro's supplemental brief that rely on the declaration, is GRANTED. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593–95 (9th Cir. 2002).