Filed 9/4/13  In re Bean CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| In re ANTHONY BEAN<br><br>on Habeas Corpus. | C072465<br><br>(Super. Ct. No. 11F07120)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 8, 2013, be modified as follows:

On page 21, the phrase "remove all documents related to the validation from petitioner's prison file" is deleted from the "Disposition" so the disposition now reads:

> The Department of Corrections and Rehabilitation is directed to vacate petitioner's 2010 gang validation decision, which validated petitioner as a member of the Black Guerrilla Family (BGF) prison

1

gang, and is further directed to (1) report the expungement of petitioner's 2010 validation to all gang-related enforcement databases and clearinghouses to which the original validation was reported previously and (2) cease housing petitioner based on the 2010 gang validation.

This modification changes the judgment.

Respondent's petition for rehearing is denied.


BY THE COURT:


  BLEASE              , Acting P. J.


  BUTZ                , J.


  MURRAY             , J.

Filed 8/8/13 (unmodified version)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re ANTHONY BEAN<br><br>on Habeas Corpus. | C072465<br><br>(Super. Ct. No. 11F07120) |

This petition challenges a decision of California's Department of Corrections and Rehabilitation (CDCR) validating petitioner, prison inmate Anthony Bean, as an active member of the Black Guerrilla Family (BGF) prison gang. Prison regulations provide that a gang validation must be premised on three independent sources of information ("source items") . (Cal. Code Regs., tit. 15, § 3378, subd. (c)(3).)[1] Although CDCR relied on four source items, two of the source items fail to meet the requirements of CDCR's regulations. Specifically, one source item, a report from the "debriefing" of a prison gang member, fails to refer to "specific gang related acts or conduct" by petitioner, as required by section 3378, subdivision (c)(8)(M). Another source item, a book order

_____

[1] Further undesignated section references are to title 15 of the California Code of Regulations.

1

form found in petitioner's possession, is not supported by prison staff's articulation of why, "based on either the explicit or coded content," the written material is reliable evidence of association or membership with the gang, as required by section 3378, subdivision (c)(8)(C). Accordingly, we shall direct CDCR to vacate petitioner's gang validation decision and to cease housing him based on that validation.

## PROCEDURAL BACKGROUND

CDCR validated petitioner as a member of the BGF in 2010. As a consequence of that validation, petitioner has been transferred from California State Prison, Sacramento, to the security housing unit (SHU) at Pelican Bay State Prison.[2]

Prison gang investigators recommended that petitioner be validated as a BGF prison gang member based on five source items. Although CDCR's gang validation reviewer concluded that all five items "meet validation requirements," the reviewer indicated that one of the items (a "Confidential 128b dated 08/16/10") was considered to be a support document to the first source item (a "Confidential CDCR 128b dated 08/23/10"). Accordingly, respondent, in the informal opposition and in the return filed in this court, has taken the position that petitioner's gang validation is supported by four source items (i.e., the four source items other than the "Confidential 128b dated

---

[2] On January 12, 2011, an Administrative Segregation Unit Institutional Classification Committee at California State Prison, Sacramento, retained petitioner in administrative segregation, due to the imposition of an indeterminate SHU term based on his validation as a BGF member, pending his transfer to the SHU at Pelican Bay State Prison. Correspondence received by this court from petitioner shows that he has now been transferred to Pelican Bay State Prison.

2

08/16/10"). We accept respondent's concession that petitioner's validation is based on only four source items, which do not include the "Confidential 128b dated 08/16/10" as an independent source item.[3] As relevant, we will summarize the evidence supporting the validation decision in the discussion portion of this opinion.

Petitioner unsuccessfully challenged his gang validation by filing an administrative appeal. Petitioner then sought relief by filing a petition for writ of habeas corpus in the superior court. The superior court denied the petition on the ground that petitioner's claims are not cognizable on habeas corpus.

Petitioner then filed a petition for writ of habeas corpus in this court. We obtained the confidential source item documents before issuing an order to show cause returnable before this court and appointing counsel to represent petitioner. We are now in receipt of respondent's return and petitioner's traverse.

---

[3] There is another reason that we will not treat the "Confidential 128b dated 08/16/10" as an independent source item. By order dated December 10, 2012, this court ordered respondent to "file under seal with this court copies of all materials relied upon by the Department of Corrections and Rehabilitation in validating petitioner as a gang member." Despite that order, respondent has not filed under seal in this court any document related to the "Confidential 128b dated 08/16/10." Accordingly, there is no evidence before this court which supports respondent's reliance on "Confidential 128b dated 08/16/10" either as an independent source item or as support for another source item.

3

## DISCUSSION

## I. Legal Background

### A. Validation Decision Requirements

"Prison regulations promulgated by [CDCR] set forth the procedures and substantive requirements for validating an inmate as a member or associate of a prison gang. Because gangs 'present a serious threat to the safety and security of California prisons' (Cal. Code Regs., tit. 15, § 3023, subd. (b)), validation of an inmate as a gang member or associate can result in the inmate's placement in a security housing unit (SHU)." (*In re Cabrera* (2012) 55 Cal.4th 683, 685.)

"A gang 'member' is described as 'an inmate/parolee or any person who has been accepted into membership by a gang.' (§ 3378, subd. (c)(3).) The validation of either a gang member or associate requires the recognition of three reliable source items indicative of active association with the gang, and at least one of those sources must constitute a direct link to a current or former validated gang member or associate. (See [*In re*] *Efstathiou* [(2011)] 200 Cal.App.4th [725,] 730; see also §§ 3378, subd. (c)(2), (3), (4), (8), 3321.)" (*In re Fernandez* (2013) 212 Cal.App.4th 1199, 1205, fn. omitted.)

"Section 3378 lists 13 different categories of source items indicative of association with validated gang affiliates, including an inmate's admission of involvement with the gang, tattoos and symbols distinctive to the gang, written material or communications evidencing gang activity, the inmate's association with validated gang affiliates, and offenses reflecting gang affiliation. (§ 3378, subd. (c)(8).)" (*In re Cabrera, supra*, 55 Cal.4th at p. 689.) In this case, respondent asserts petitioner's validation is based on

4

just two of the 13 source item categories, i.e., "debriefing reports" pursuant to subdivision (c)(8)(M) of section 3378 and "written material" pursuant to subdivision (c)(8)(C) of section 3378.

## B. Standard of Review

"The 'some evidence' standard is the constitutional test that applies to court review of certain prison administrative decisions, including the gang validation decisions at issue here as well as other decisions such as parole or prison discipline affecting an inmate's credits. ([*In re*] *Furnace* [(2010)] 185 Cal.App.4th [649,] 659; see *Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 364, 105 S.Ct. 2768]; [*In re*] *Efstathiou, supra*, 200 Cal.App.4th at p. 733.) In applying that standard in the gang validation context, the court must still consider whether the requisite findings have been established consistent with the administrative regulations. There must be three independent sources of evidence supporting the gang validation decision, at least one of which provides direct evidence of gang activity. (Cf. [*In re*] *Furnace, supra*, at pp. 659–663 [reviewing gang validation decision]; see [*In re*] *Efstathiou, supra*, at p. 730; *In re Sampson* (2011) 197 Cal.App.4th 1234, 1242–1243 [130 Cal.Rptr.3d 39].)" (*In re Fernandez, supra*, 212 Cal.App.4th at p. 1207.)

"Court review of a gang validation decision, like review of other administrative decisions by prison staff, is nevertheless deferential. 'The existence of a nonincriminating explanation for a source item . . . is irrelevant to this court's "some evidence" review. Neither is it appropriate for this court to weigh conflicting evidence.' ([*In re*] *Furnace, supra*, 185 Cal.App.4th at p. 663.) 'The issue is simply whether the

5

evidence in question permits a court to conclude that the administrator had reasons for his or her decision.' (*Id*. at p. 659.) Nevertheless, the state Supreme Court has cautioned in applying the some evidence standard in the related administrative context of parole decisions that the decision 'must be supported by some *evidence*, not merely by a hunch or intuition.' (*In re Lawrence* (2008) 44 Cal.4th 1181, 1213 [82 Cal.Rptr.3d 169, 190 P.3d 535].)" (*In re Fernandez, supra*, 212 Cal.App.4th at p. 1207.)

## II.  Petitioner's Contentions are Cognizable on Habeas Corpus

We must first address respondent's contention that habeas corpus does not provide a remedy for petitioner's claims that CDCR failed to comply with its own regulation regarding validation of gang members and that CDCR's gang validation decision violated petitioner's right to due process.

### A.  Habeas Corpus Lies to Remedy CDCR's Violation of its Gang Validation Regulation

As we understand the contention, respondent asserts habeas corpus does not lie as a remedy for respondent's failure to comply with its own prison gang regulation because gang validation is part of the prison classification process, which lies within CDCR's responsibility, so that subjecting that process to judicial review would expand "the judiciary's traditional role beyond that of protecting prisoners from decisions that violate the prisoner's constitutional or statutory rights."  Respondent cites no apposite authority in support of this novel contention, and ignores apposite authority to the contrary.

In California state courts, habeas corpus lies to vindicate not only statutory or constitutional rights, but also violations of administrative regulations.  "Historically, the

6

function of the writ of habeas corpus was to 'releas[e] a person imprisoned or restrained as a result of a void proceeding or jurisdictional defect in the imprisoning authority.' [Citations.] The writ has been expanded to address wrongful imprisonment even in situations in which jurisdiction is not lacking. [Citation.] [¶] Additionally, 'habeas corpus may be sought by one lawfully in custody for the purpose of vindicating rights to which he is entitled in confinement.' (*In re Jordan* (1972) 7 Cal.3d 930, 932 [103 Cal.Rptr. 849, 500 P.2d 873]; see, e.g., *In re Davis* (1979) 25 Cal.3d 384, 387 [158 Cal.Rptr. 384, 599 P.2d 690] [challenging lengthy administrative and disciplinary segregation pending rules violation hearing]; *In re Harrell* (1970) 2 Cal.3d 675, 682 [87 Cal.Rptr. 504, 470 P.2d 640] [addressing access to courts and conditions of confinement]; *In re Riddle* (1962) 57 Cal.2d 848, 851 [22 Cal.Rptr. 472, 372 P.2d 304] [alleging cruelty by prison guards].) *Those rights include not only statutory or constitutional violations, but also violations of administrative regulations.* (See, e.g., *In re Dannenberg* (2005) 34 Cal.4th 1061 [3 Cal.Rptr.3d 417, 104 P.3d 783] [challenging Board of Prison Terms's failure to apply its own 'matrix' regulations to parole-eligible inmates]; *In re Van Geldern* (1971) 5 Cal.3d 832 [97 Cal.Rptr. 698, 489 P.2d 578] [challenging regulation requiring inmate-authors to relinquish 25 percent of royalties from published writings].)" (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 309, fn. 10, italics added.)

"Penal Code section 1473, subdivision (a), provides: 'Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.'

7

Subdivision (d) of Penal Code section 1473 reads: 'Nothing in this section shall be construed as limiting the grounds for which a writ of habeas corpus may be prosecuted or as precluding the use of any other remedies.' The function of habeas corpus 'has evolved from the traditional remedy for release of a prisoner to include a declaration of rights of a prisoner not entitled to outright release. [Citations.] The writ of habeas corpus may be used to secure fundamental rights of a person lawfully in custody.' (*In re Brindle* (1979) 91 Cal.App.3d 660, 669 [154 Cal.Rptr. 563]; see *In re Riddle*[, *supra*,] 57 Cal.2d [at p.] 851 [22 Cal.Rptr. 472, 372 P.2d 304] [writ of habeas corpus can be used to protect 'fundamental basic rights' of prisoners].) More recent cases have dropped the limitation to 'fundamental' rights, stating that the writ of habeas corpus can be used by inmates to address a deprivation of their 'rights' while in confinement. (See *In re Arias* (1986) 42 Cal.3d 667, 678 [230 Cal.Rptr. 505, 725 P.2d 664], abrogated by statute on another point as recognized in *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 130 [105 Cal.Rptr.2d 46, 18 P.3d 1198]; *In re Davis*[, *supra*,] 25 Cal.3d [at p.] 387 [158 Cal.Rptr. 384, 599 P.2d 690].)" (*In re Garcia* (2012) 202 Cal.App.4th 892, 901-902 [habeas corpus lies as to inmate's claim of violation of statutory rights under the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. § 2000cc et seq.)].)

Respondent's contention ignores the nearly century-long recognition that, in California state courts, habeas corpus lies to compel custodial officials' compliance with state law implicating conditions of confinement as well as to correct deprivations of constitutional rights. As the Court of Appeal stated in 1920: "We think that a person

8

may be said to be unlawfully 'restrained of his liberty,' so as to be entitled to the writ of habeas corpus, when, though unlawfully in custody, he is deprived of some right to which, even in his confinement, he is lawfully entitled under the constitution or laws of this state or the United States, the deprivation whereof serves to make his imprisonment more onerous than the law allows, or curtails, to a greater extent than the law permits even in his confinement, his freedom to go when and where he likes." (*In re Rider* (1920) 50 Cal.App. 797, 801, italics omitted; see also *In re Ferguson* (1961) 55 Cal.2d 663, 669 [quoting *Rider* with approval, and adding: "It thus appears that a writ of habeas corpus may be sought to inquire into alleged illegal restraints upon a prisoner's activities which are not related to the validity of the judgment or judgments of incarceration, but which relate 'solely to a matter of prison administration.' "].)

Accordingly, the courts have regularly examined, via habeas corpus, California prison inmates' claims of violation of statutory or regulatory law pertaining to conditions of prison confinement. (See, e.g., *In re Cabrera, supra*, 55 Cal.4th 683 [evaluating inmate's claim that CDCR misapplied and misinterpreted section 3378, the prison gang validation regulation]; *In re Jenkins* (2010) 50 Cal.4th 1167, 1182 [evaluating inmate's claim that CDCR violated prison regulation in making a classification decision]; *In re Young* (2004) 32 Cal.4th 900 [evaluating inmate's claim of statutory entitlement to credit for performing a heroic act in prison]; *In re Van Geldern, supra*, 5 Cal.3d 832 [evaluating inmate's claim that a CDCR rule regarding royalty profits from published writings was inconsistent with state law]; *In re Martinez* (2013) 216 Cal.App.4th 1141 [evaluating inmate's claim that prison rule regarding obscenity was inconsistent with CDCR

9

regulation regarding obscenity]; *In re Fernandez, supra*, 212 Cal.App.4th 1199 [evaluating inmates' claim that CDCR violated section 3378 by validating them as gang members without evidence of three source items]; *In re Furnace, supra*, 185 Cal.App.4th 649 [same]; *In re Bode* (1999) 74 Cal.App.4th 1002 [evaluating inmate's claim of entitlement to parole hearing transcript under state law]; *In re Bittaker* (1997) 55 Cal.App.4th 1004 [declaring inmate's statutory right to file habeas corpus petition without complying with vexatious litigant statute]; *In re Hamilton* (1996) 41 Cal.App.4th 926 [evaluating inmate's claim that CDCR violated state law regarding surcharges charged inmates on their purchases of handicraft materials].)

Moreover, the distinction that respondent would have us draw between statutory and regulatory rights makes no logical sense. As the Supreme Court explained in the context of CDCR's gang validation regulation: "Section 3378 (the regulation at issue here) is a quasi-legislative rule promulgated by the CDCR to identify and manage inmates with a prison gang affiliation. Because the CDCR, like any agency granted this sort of substantive lawmaking power, is 'truly "making law," [its] quasi-legislative rules have the dignity of statutes.' " (*In re Cabrera, supra*, 55 Cal.4th at p. 688.)

Finally, we reject respondent's reliance on *In re Johnson* (2009) 176 Cal.App.4th 290 (*Johnson*). There, the court denied an inmate's claim that his disciplinary removal from his position as a prison chaplain clerk violated his right to due process. (*Id.* at pp. 293-297.) Because the inmate's contention was premised on a due process violation, and the court rejected that contention, the court properly denied the habeas corpus petition. However, to the extent that dicta in *Johnson* suggests that an inmate may not

10

challenge the prison's violation of an administrative regulation via habeas corpus, we disagree for the reasons stated above.

The effect of section 3378 is to preclude respondent from validating petitioner as a prison gang member unless there is evidence of three source items indicating petitioner's gang membership. Petitioner's claim that evidence of three source items is lacking, i.e., that respondent has violated section 3378, is cognizable via a petition for writ of habeas corpus.

## B. Habeas Corpus Lies to Remedy a Due Process Violation Resulting from Gang Validation Lacking Evidence

Respondent alternatively contends that gang validation does not result in a due process violation because a validated prison gang member will not necessarily be housed in the SHU, and even if the inmate is assigned to the SHU due process requires only notice and an opportunity to be heard and does not require judicial review. Respondent's contention was recently rejected in *In re Cabrera* (2013) 216 Cal.App.4th 1522.

Moreover, respondent's contention runs afoul of authority holding that an unsupported CDCR gang validation decision violates an inmate's right to due process and is accordingly subject to judicial review under the "some evidence" standard of review. (See, e.g., *In re Cabrera, supra*, 55 Cal.4th at p. 692 ["[w]hether the evidence is sufficient, under the regulation as properly construed, to uphold the validation of Cabrera as a gang associate, and whether the validation and placement in the SHU otherwise violates any of Cabrera's rights, is for the Court of Appeal to decide on remand in the first instance"]; *In re Villa* (2013) 214 Cal.App.4th 954, 962 [due process is satisfied if a

11

prison gang validation decision is supported by some evidence]; *In re Fernandez, supra*, 212 Cal.App.4th at p. 1207 [CDCR did not dispute that due process compels court review of a gang validation decision pursuant to the "some evidence" standard]; *In re Furnace, supra*, 185 Cal.App.4th at p. 659 [due process satisfied if gang validation decision is not "arbitrary, capricious, irrational, or an abuse of . . . discretion," i.e., if it is supported by "some evidence"]; see also *Castro v. Terhune* (9th Cir. 2013) 712 F.3d 1304, 1314 ["Due Process guarantees [an inmate] that the evidence used to validate him [as a prison gang member] meet the 'some evidence' evidentiary standard"].)

In any event, we reject the premises of respondent's argument. First, although a gang validation decision does not necessarily result in the inmate's transfer to the SHU (see § 3378, subd. (d)), there is no dispute that in this case petitioner has been assigned to the Pelican Bay State Prison SHU, based on his validation as a BGF prison gang member.

Second, respondent's contention that due process requires only notice and a written decision in the context of gang validation decisions, and precludes judicial review via habeas corpus, is premised on respondent's misunderstanding of *Wilkinson v. Austin* (2005) 545 U.S. 209 (*Wilkinson*). There, the United States Supreme Court held that an inmate's placement in Ohio's "Supermax" prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, and consequently gives rise to a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. (*Wilkinson, supra,* at pp. 213, 221-224.) This is so because Supermax confinement involves solitary confinement for 23 hours per day, is indefinite with only annual review, and disqualifies an otherwise eligible inmate for parole

12

consideration. (*Id*. at pp. 223-224.)[4] After concluding the inmate's confinement gave rise to a liberty interest, the United States Supreme Court considered only the question of what procedural due process is required *during the decisionmaking process* as to an inmate placed in the Supermax prison. (*Id.* at pp. 224-229.) The Court did not directly address the question whether due process compels judicial review of Supermax confinement decisions. But, the Court necessarily assumed that judicial review of such confinement is required, in stating: "If an inmate were to demonstrate that the New Policy [i.e., the decisionmaking procedures] did not in practice operate in this fashion, resulting in a cognizable injury, that could be the subject of an appropriate future challenge. On remand, the Court of Appeals, or the District Court, may consider in the

---

[4] Respondent's acknowledgment that some process is due an inmate confined in the SHU implicitly recognizes that such confinement implicates the inmate's liberty interest. We note confinement at Pelican Bay's SHU seems to be analogous to confinement in Ohio's Supermax prison. " 'Located in a completely separate complex inside the security perimeter, the [Pelican Bay State Prison] SHU has gained a well-deserved reputation as a place which, by design, imposes conditions far harsher than those anywhere else in the California prison system.' (*Madrid v. Gomez* [(N.D.Cal. 1995)] 889 F.Supp. [1146,] 1155.) The roughly 1,200 inmates confined in the SHU 'remain isolated in windowless cells for 22 and 1/2 hours each day, and are denied access to prison work programs and group exercise yards.'" (*In re Morales* (2013) 212 Cal.App.4th 1410, 1415.) Although in general an inmate assigned to an indeterminate SHU term is subject to a classification committee review at least every 180 days (§ 3341.5(c)(2)(A)(1)), an inmate like petitioner, assigned to an indeterminate term as a result of prison gang validation (see § 3341.5(c)(2)(A)(2)), can be released from SHU confinement only if he submits to and succeeds in voluntary gang debriefing (§ 3378.1) or if he desists in engaging in gang activity for six years and is then determined to be "inactive" (§ 3378, subd. (e)). Further, confinement in the SHU necessarily adversely affects an inmate's ability to obtain parole. (See § 2402, subds. (c)(6) & (d)(9) [institutional behavior as factors for parole suitability]; see also *In re Davis*, *supra*, 25 Cal.3d at pp. 387-388 [quoting federal court decision recognizing that parole is usually denied to inmates retained in the SHU].)

13

first instance what, if any, prospective relief is still a necessary and appropriate remedy for due process violations under Ohio's previous [decisionmaking] policies." (*Id*. at p. 230.)

Most significantly, the Supreme Court in *Wilkinson* did not address, let alone question or distinguish, its prior decision in *Superintendent v. Hill*, *supra*, 472 U.S. 445, that due process compels that a prison decision implicating an inmate's liberty interest be subject to judicial review to determine whether the decision is supported by "some evidence": "In a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence. [Citations.] Because the written statement mandated by *Wolff* [*v. McDonnell* (1974) 418 U.S. 539] requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." (*Id*. at p. 455.)

### III. Petitioner's Gang Validation is Not Supported by "Some Evidence"

As we have indicated, CDCR regulations provide that the validation of a prison gang member must be supported by at least three independent source items. (§ 3378, subd. (c)(3).) As we shall explain, two of the four source items relied on by CDCR in validating petitioner as a prison gang member are not supported by any evidence. It is therefore unnecessary for us to consider the remaining two source items.

14

## A. Debriefing Report, October 31, 2007 Memo

One of the four source items used in the validation decision is a debriefing report by a validated BGF member. In validating a gang member, CDCR may rely on evidence that "comes from 'debriefing' inmates who were involved with the prison gang. The regulation provides: 'Only information referencing specific gang related acts or conduct shall be considered as a source item. Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation.' (§ 3378, subd. (c)(8)(M).)" (*In re Fernandez, supra*, 212 Cal.App.4th at p. 1206.)

In *In re Fernandez*, this court concluded that no evidence supported CDCR's reliance on a debriefing report to validate an inmate named Saldana as a prison gang member. The debriefing report indicated that a validated gang member identified Saldana as an associate of the Northern Structure (NS) prison gang, but did not show that Saldana participated in any identified gang activity. We explained: "We have reviewed the confidential source material itself and concluded that it is inadequate. As previously noted, use of a debriefing report is limited by the clear and unequivocal evidentiary requirement that '[o]nly information referencing specific gang related acts or conduct shall be considered as a source item.' (§ 3378, subd. (c)(8)(M).) Here, the debriefed inmate failed to describe the nature of Saldana's involvement with the gang, other than simply describing him as an 'associate.' Not only are no specific acts or incidents involving Saldana mentioned, but there is likewise no mention of him serving a particular role or job for the gang (as there is in Fernandez's case). Further, the confidential material does not otherwise describe how Saldana interacted with NS members or was

15

otherwise involved with the NS. Consequently, even assuming the required showing may be made by inference, there is no way to make the required inference. 'Some evidence' does not support the decision." (*In re Fernandez, supra*, 212 Cal.App.4th at pp. 1212-1213, fns. omitted.)

Here, during the gang validation proceedings, respondent issued to petitioner a confidential information disclosure form, which summarized a confidential memorandum dated October 31, 2007. According to the confidential information disclosure form, as relevant: "BEAN was identified by a validated BGF member undergoing the debrief process as a BGF member. BEAN was identified as physically assaulting a BGF member while housed at San Quentin State Prison. BEAN is directly linked to the BGF member being debriefed." We have reviewed the October 31, 2007, confidential memorandum, which adds only, as relevant, the name of the debriefed BGF member, the name of the BGF member assaulted by petitioner at San Quentin, petitioner's "aka," and the approximate date of the incident.

The confidential memorandum fails to refer to "specific gang related acts or conduct" committed by petitioner. That is, the memorandum fails to indicate how the information specifically relates to petitioner's involvement with the gang, such as, for example, by asserting that the assault on the BGF member was ordered by, or conducted on behalf of, the BGF. The fact that petitioner assaulted a BGF member has no tendency in itself to show that petitioner was a BGF member or that the assault was a gang related act. Thus, this source item consists of nothing more than a debriefed BGF member's identification of petitioner as a BGF member. "Some evidence" does not support

16

respondent's reliance on the October 31, 2007, confidential memorandum as a source item for petitioner's validation as a prison gang member.

## B. Written Material, August 20, 2010 Memo

In validating petitioner as a BGF member, respondent also relied on a book order form found in petitioner's possession. In its return, respondent justifies its reliance on this book order form on the ground that it constitutes a "written material" source item.

A "written material" source item is defined in the gang validation regulation as: "Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, *based on either the explicit or coded content*, the written material is reliable evidence of association or membership with the gang." (§ 3378, subd. (c)(8)(C), italics added.)

Central to the plain language of this definition is the requirement that there be something in the *content* of the written material that evidences gang membership or association. The definition is thus directly analogous to a related source item, "communications," defined as: "Documentation of telephone conversations, conversations between inmates, mail, notes, greeting cards, or other communication, including coded messages evidencing gang activity. Staff shall articulate why, *based on either the explicit or coded content*, the communication is reliable evidence of association or membership with the gang." (§ 3378, subd. (c)(8)(L), italics added.) Neither definition provides that the mere fact of a communication between an inmate and gang member, or the fact that a gang member has given written material to another inmate, is

17

in itself indicative of gang membership or association. Rather, the plain language of the regulation requires respondent to point to something in the content of the written material or communication that evidences gang membership or association.**5**

During the gang validation proceedings, respondent issued to petitioner a confidential information disclosure form, which summarized a confidential memorandum dated August 20, 2010. According to the confidential information disclosure form, as relevant: "[O]n August 4, 2010, a search of the personal paperwork belonging to BEAN was conducted. During the course of this search a book order form was discovered. The order form was for a book titled 'Finding Freedom: Writings From Death Row.' The

---

**5** Because the return attempts to justify reliance on the book order form solely as a "written material," we have no occasion to address whether the book order form might meet one of the other source item definitions in section 3378. We note that although respondent's institution gang reviewer labeled the book order form, without explanation, as "communication/association," respondent has not argued that the book order form constitutes a communication or association source item. In any event, our analysis of the content requirement is the same whether the book order form is characterized as a "written material" source item or a "communication" source item. Moreover, respondent does not take the position in this proceeding that the act of a validated gang member in sending a document to, or asking a third person to send a document to, another inmate constitutes "association" within the meaning of subdivision (c)(8)(G) of section 3378. (See *In re Cabrera, supra*, 55 Cal.4th at pp. 691-692 ["Here, by contrast, nothing in the plain language of section 3378 requires proof the inmate formed a reciprocal or mutual relationship with a validated gang affiliate in order to establish a direct link, via the source item category of association, with that gang affiliate. The Court of Appeal appears to suggest that such a requirement would nonetheless be necessary as a matter of policy, for '[o]therwise, a validated gang affiliate could create such a relationship with an inmate unilaterally, without any assent or mutuality on the part of the inmate.' But the CDCR has not claimed the requisite connection could be formed by unilateral conduct by the validated gang affiliate. Rather, as the Court of Appeal acknowledges in the very next sentence of its opinion, the connection contemplated by the CDCR is 'unilateral action *by an inmate*.'"].)

18

author of this book is identified as MASTERS, Jarvis aka 'Lefthand' a validated BGF member. At the top of the order form the following handwritten entry was discovered. 'Hey! Lefthand asked me to forward this. ♥ Donna.' This document reveals BEAN's continued communication via third party contact with a validated BGF member." We have reviewed the confidential memorandum dated August 20, 2010, which attaches a copy of the book order form.

Respondent supports its return with the declaration of Special Agent Beeson of CDCR's Office of Correctional Safety, a prison gang expert. As relevant to the book order form, Agent Beeson asserts, "Bean's possession of the book order form demonstrates Bean's continued contact and communication, via a third party, with a validated BGF member." In a similar vein, the confidential memorandum asserts that prison gang members use third party community contacts to maintain contact with inmates housed in separate prison facilities or institutions.

However, the plain language of subdivision (c)(8)(C) of section 3378 requires that something in the content of the written material, either explicit or coded, must evidence gang association or membership. Respondent does not contend that the book that is the subject of the book order form evidences gang involvement, or that the description of the book on the book order form evidences gang involvement. (Compare *In re Furnace*, *supra*, 185 Cal.App.4th at p. 660.) Nor does respondent argue that the words handwritten on the book order form are themselves evidence of gang involvement, other than that those words show a communication. But an interpretation of section 3378, subdivision (c)(8)(C) as including a written material that shows a communication from a prison gang

19

member, whether directly or through a third party contact, would do violence to subdivision (c)(8)(L) which on its face permits such a communication absent evidence that the explicit or coded content of the communication evidences gang association or membership. Further, this is not analogous to an inmate's possession of the address, name or identity information of a gang member, which is expressly prohibited by the "association" source item of subdivision (c)(8)(G) of section 3378. (*In re Furnace, supra,* at pp. 660-661.)

A plain language reading of subdivision (c)(8)(C) of section 3378 avoids both overbroad and absurd applications of the regulatory scheme. The regulation cannot be interpreted to penalize all third party communications from a prison gang member to another inmate, precluding a gang member's friends or family members from passing along social greetings or communications. (See *Castro v. Terhune, supra*, 712 F.3d at p. 1312 ["prison officials, without more, cannot validate inmates based on a mere 'social connection to an individual gang member.' [Citation.] Any connection must evidence affiliation or association with a gang to be used as a source item supporting validation"]; § 3343, subds. (e) & (f) [inmates in the SHU are permitted to send and receive personal mail, and to have non-physical contact visits].) And the regulation would be subject to an absurd reading if a validated gang member could create false evidence of gang validation simply by mailing documents to an inmate or having a third person mail documents to the inmate. (See *In re Fernandez, supra*, 212 Cal.App.4th at p. 1212 ["The 'independence' of the source items in such a context would be in question, and there would be a real

20

danger of facilitating an attempt by the gang to leak false information to target its enemies"].)

Because the record contains no evidence to support two of the four source items relied on by respondent in validating petitioner as a prison gang member, we must grant petitioner relief via habeas corpus.

## DISPOSITION

The Department of Corrections and Rehabilitation is directed to vacate petitioner's 2010 gang validation decision, which validated petitioner as a member of the Black Guerrilla Family (BGF) prison gang, and is further directed to (1) report the expungement of petitioner's 2010 validation to all gang-related enforcement databases and clearinghouses to which the original validation was reported previously, (2) remove all documents related to the validation from petitioner's prison file, and (3) cease housing petitioner based on the 2010 gang validation.

    BLEASE          , Acting P. J.

We concur:

    BUTZ           , J.

    MURRAY        , J.

21